GIBBS et al. v BLUE CAB, Inc. et al.

No. 7710.   Decided July 15, 1953.   (259 P. 2d 294.)

See 61 C. J. S., Vehicles, sec. 23. Bicyclist injured by automobile, contributory negligence of. 5 Am. Jur., Automobiles, sec. 440; 172 A. L. R. 736.

*Heber Grant Ivins,* American Fork, *Robert B. Porter* and *Delbert M. Draper, Jr.,* Salt Lake City, for appellants.

*Skeen, Thurman & Worsley* and *John H. Snow,* Salt Lake City, for respondents.

HENRIOD, Justice.

This case having been re-argued on re-hearing, and the record and the law having been re-examined by the court, and believing and concluding that no new matter has been presented which convinces the majority of the court that error was committed, we affirm our previous decision in this case. We are also in accord with the comments of Mr. Justice CROCKETT published in connection herewith.

WADE, J., concurs.

CROCKETT, Justice.

I concur in the opinion of Mr. Justice HENRIOD re-affirming our original decision, but in view of the points urged on rehearing think a brief explanation is in order.

The evidence does not show, that Mr. Gibbs was going to work, nor in fact where he was going, nor which direction the bicycle was pointed. It is therefore necessary to let the jury determine his direction from the sparse facts in the record.

Without again detailing the evidence, it seems clear to me that from the direction of the cab (from the west) and

what was shown of the position of the vehicles at the time of impact and thereafter, plus the uncontrovertible fact that the cab struck the rear of the front wheel of the bicycle (that was the only place the bicycle was struck or damaged), the jury could reasonably find that the bicycle was pointed east or easterly at the time, and for some period before the impact; therefore, the cab having approached from the west, would not have seen the bicycle's light if it had had one. The dissenting opinion speaks of "a gleam emanating from a light" casting a "reflection on an object or the ground it might have warned the driver" as though the bicycle light might be equivalent to an automobile or at least a motorcycle headlight. Any kind of light would have satisfied the legal requirement; and it is common knowledge that bicycle lights, necessarily powered by little batteries, are but small lights. If pointed away from the cab, the deceased's body behind it, as it naturally would have been whether walking or riding, could have completely obliterated the light from the view of the cab. Under such facts, whether deceased had a light on his bicycle or not would have had nothing to do with the cause of the collision.

Thus the question of whether deceased's contributory negligence in not having the light was a proximate cause of his injury and death is within the principle recently announced by this court:

"* * * if there is any reasonable basis, either because of lack of evidence, or from the evidence and the fair inferences arising therefrom, taken in the light most favorable to plaintiff, upon which reasonable minds may conclude that they are not convinced by a preponderance of the evidence * * * (b) that such [contributory] negligence proximately contributed to cause the injury, the plaintiff is entitled to have the question submitted to a jury."[1]

Counsel voice considerable concern over the statement in the original opinion concerning the "confusion of already decided cases" which the author says is "wholly irrecon-

---

[1]*Martin* v. *Stevens*, 121 Utah 484, 243 P. 2d 749.

cilable by employment of any amount of logic." Respondent now contends that the confusion is not only added to but multiplied by such statement. It is to be noted that that part of the original opinion is but obiter dicta, ratio impertinens, having nothing to do with the ratio decidendi of the case. The decision itself was entirely logical and consistent with principles well established and expressly relied upon by this court in similar cases in recent decisions.[2]

WOLFE, Chief Justice (dissenting).

My dissent in the case as originally written gives generally my reasons for the dissent here. The prevailing opinion here sees nothing to correct in the former opinion. It entirely spares us any answers to the many questions raised in the dissent to the former opinion and helps us not at all.

We learn from Mr. Justice CROCKETT whose more helpful and candid opinion attempts to supply us with some basis for the conclusions reached by the majority, but as I shall in a few moments demonstrate actually gives no basis for any inference, that the cab was going directly behind the cycle and in the same direction as the cycle. It is perhaps conceivable that had the cab been following in a direct line with the cycle, a gleam from a light on the cycle reflected straight ahead might not have acted as a warning to the cab of the presence of the cycle. Even then, had the gleam cast a reflection on an object or on the ground it might have warned the driver of the cab. But how far fetched can our speculations become before they cease to be grist for the mill of jury deliberations?

Laying aside any discussion of the factor of giving the benefit of such a speculation to one who has failed to provide himself with an implement, the lack of which makes

---

[2]*Lowder* v. *Holley,* 120 Utah 231, 233 P. 2d 350; *Poulsen* v. *Manness,* 121 Utah 269, 241 P. 2d 152; *Hess* v. *Robinson,* 109 Utah 60, 163 P. 2d 510; *Martin* v. *Stevens,* see Note 1, supra.

indulgence in such speculations necessary to save this case for a jury (a matter thoroughly discussed in my former dissenting opinion), I shall briefly comment on the validity of the speculation itself.

The decedent lived in such location that the jury could perhaps have inferred that it would have been necessary or convenient for him to have traversed the intersection *across* the east-west travel line of the cab in order to get from his home to his work; further, in order to have been first seen within the cone of light emanating from the left head light of the cab (the record shows decedent was first revealed by the left headlight) he would ordinarily have been traveling near the center of the street whereas by ordinance he should have been traveling—a slow moving vehicle—close to the right curb—when his presence would normally have been revealed by the *right* front headlight. These facts furnish a far more potent and valid basis to infer his direction than the involved and flimsy structure seeking to be erected by Mr. Justice CROCKETT. We must throughout this phase of the case keep in mind that we are speculating on a negative. We are speculating that the situation was such that had the cyclist had light radiation, which he had not but which the law required, it would nevertheless have been of no avail to warn the cab driver because by a second speculation the cyclist was so situated in relation to the cab driver that a radiation from a light had there been one would not have been seen. Admitting for the purpose of this speculation only, but not conceding it as a phenomenon which would have happened in this case had there been a light, a gleam emanating from a light would not have been visible to any one approaching directly from behind in line with the gleam (had there been one).

The only two actors in that early morning drama were the cab driver and the cyclist who is now deceased. The cab driver testifies not to any direction in which the cyclist

was headed but only that he (the cyclist) suddenly loomed up in front of the *left* headlight of his cab in the middle of the intersection. He (the cab driver) does not know which direction the cyclist was headed, where he came from or whether he was riding or pushing the bicycle afoot. There was so far as known, no other witness. It is extremely improbable that any other witness will be found. Yet under these circumstances this case is to be given to a jury to decide whether

"there is any reasonable basis, either because of lack of evidence, or from the evidence and the fair inferences arising therefrom, taken in the light most favorable to the plaintiff, upon which reasonable minds may conclude that they are *not convinced* by a preponderance of evidence that such negligence proximately contributed to cause the injury" (italics mine).

I suppose we on this bench and a judge on the district bench may take judicial notice of the ready and easy maneuverability of a bicycle. Its direction may be instantly changed.

I submit under all the evidence of this case which has been adduced and which is all the evidence we can reasonably say it is possible to adduce, a finding that the bicycle was proceeding in an east direction or an easterly direction so as to base thereon a further finding that a gleam of a light had there been one *could not* have warned the cab driver arises no higher than the merest conjecture. Even if the cyclist were travelling slightly north of east a gleam or radiation (had there been one) might have traversed the projected path of the oncoming cab and warned him of its imminence.

### Mr. Justice CROCKETT states that

"it seems clear to me that from the direction of the cab and what was shown of the positions of the vehicles at time of impact and thereafter, plus the uncontrovertible fact that the cab struck the rear of the front wheel of the bicycle, the jury could reasonably find that the bicycle was pointed east or easterly at the time, and for some

period before the impact; therefore, the cab having approached from the west, would not have seen the bicycle's light if it had had one."

What seems *clear* to Mr. Justice CROCKETT that the jury could reasonably find, I see as presenting no basis at all for an inference unless words alone can form the basis for an inference. But I think that inferences in a thinking process follow in sequential order from concepts which words stand for and not from a series of sentences. They are thought processes employing words as symbols or vehicles but not themselves inferences. I cannot see how it can be inferred in view of the easy maneuverability of a bicycle that because it was struck on the rear of the front wheel—not the rear of the rear wheel—the bicycle was going in the same direction as the taxicab, if indeed there is any real evidence of where the cab struck the cycle. How does the direction concept of the cyclist flow from the fact that he was struck lightly in the rear of his front wheel with or without the aid of the fact of the relative positions of the two vehicles before or after the impact? Admitting for purposes of this discussion, but not conceding, that a gleam shining directly ahead of an oncoming car would not by any up and down or dancing motion of the front light or any other physical phenomenon which might furnish even a chance of warning to an oncoming driver, if it were going ever so slightly on the bias or north or south of east instead of directly east so that the gleam penetrated athwart or across the path of the oncoming driver, it may have given to him warning of its presence. Yet here we are to give to the jury facts from which it is claimed it could infer as the end fact that the gleam, had there been one, would not have been noticed by the cab driver and that in the face of the fact that the unlawful absence of a light which furnishes the basis of such possible speculation was due to the decedent's own omission. I cannot, so cavalierly as does Mr. Justice CROCKETT, believe that the jury could reasonably find that the absence of the light on the cycle did not contribute to the accident.

Apparently we do not reason alike. Either there is a non sequitur in his process or I am stressing the cogency of fact and inference therefrom differently than he does. Here is a finding which, if made by the jury, would rest on pure conjecture. It is an interesting study of the length to which we will go to save a case for the jury on the ground of allowable and reasonable inference matters that rest purely on guess. I submit the facts which I mentioned a moment ago form a basis for an inference as to a direction of the cyclist which accord more accurately with the true facts—yet even that would only be a speculation.

I would now at this late day rather than put this foundationless case to a jury and go through another lawsuit and perhaps another appeal, dismiss this suit on a law judgment "no cause of action." This effort to find bases for inferences—where the facts will not stand still long enough to fix on any set but are so fluid or insubstantial as not to permit of inferences is a practice which is not healthy for the growth of the law.

Certainly in this case, if I have ever encountered one, reasonable minds could not be convinced or even persuaded by a preponderance of evidence because there is no evidence that will not admit of a number of inferences of equal strength and validity. The matter rests in the realm of pure guess and conjecture.

McDONOUGH, J., concurs in the dissenting opinion of WOLFE, C. J.