262 P.2d 491

**WEENIG BROS., Inc. v. MANNING.**

No. 7992.

Supreme Court of Utah.

Nov. 2, 1953.

F. Robert Bayle, Salt Lake City, for appellant.

Huggins & Huggins, Ira A. Huggins, Ogden, for respondent.

102

CROCKETT, Justice.

Plaintiff's station wagon, which it uses as a delivery truck, driven by Ronald Z. Weenig, northward on Wall Avenue in Ogden, Utah, collided with defendant Manning's coupe which he was driving southward. Trial was to the court. Although defendant was over the center line and thus on his wrong side of the road, the court did not find him negligent, but did find that the plaintiff was contributorily negligent. From adverse judgment the plaintiff appeals.

■■] In order to upset the judgment and command one in its favor, the first obstacle plaintiff must overcome is to demonstrate that the evidence shows with such certainty that reasonable minds could not differ thereon that the defendant was guilty of negligence which proximately caused the collision. In the absence of such degree of proof we could not direct that such finding be made and reverse the decision of the lower court.[1] The defendant having prevailed, on conflicting matters the evidence is viewed in the light most favorable to him.[2]

Ronald Weenig was driving northward on his own (east) side of the highway; Manning was driving southward two or three car lengths behind a truck and had edged over onto the wrong (east) side of

the center line to ascertain whether he could pass. Just as he did so, he saw Weenig's truck coming at him at a speed he described as "frightening." Manning turned his car back toward his own (west) side of the road but the left front of his coupe collided with the left side of Weenig's station wagon, the wheel of the Manning coupe being 3 feet east of the center line at the point of impact. The Weenig station wagon veered easterly off the highway, rolled over into a barrow pit, coming to rest with its wheels in the air 115 feet from the point of collision. Based upon skidmarks and the physical dynamics, an expert placed Weenig's speed at "from 42 to 54¾ miles per hour." The Manning coupe skidded about 40 feet and was brought to a stop on the surfaced portion of the roadway. There was intermittent fog so that the visibility was appreciably reduced.

■ It is plaintiff's position that the only reasonable deduction to be drawn from the evidence is that Manning was negligent in going over onto the wrong side of the center line and that this was the sole proximate cause of the collision. It is to be conceded that being on the wrong side of the highway is usually a strong indication of negligence.[3] However, it is not, and in the nature of things cannot be, the law that vehicles are always prohibited

1. Gibbs v. Blue Cab, Inc., Utah, 249 P.2d 213, aff., Utah, 259 P.2d 294.

2. Ibid.

3. North v. Cartwright, Utah, 229 P.2d 871; Staton v. Western Macaroni Mfg. Co., 52 Utah 426, 174 P. 821.

from using their left side of the highway; and when they do so in conformity with law and in due care, it is not negligence. On a two lane road (such as this one) it is obvious that it is necessary to cross the center line in passing other vehicles going the same direction. Sec. 41–6–57, U.C.A. 1953, prescribes the conditions under which this may be done:

> "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction of any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction."

█ The trial court found that Manning was not engaged in passing the truck ahead of him when the impact occurred, but that he "turned his coupe to the left to see if it were safe" to attempt to do so. It is manifest that when one is traveling behind a truck, a time will arise when even the most patient and prudent driver might pull over to his left, as did Manning, to see if he can pass. It is possible that he

pulled over farther than necessary, but Manning's evidence is that as he did so and saw Weenig's car coming at him at "frightening" speed, he pulled back toward his own side as fast as he could, yet Weenig sideswiped his car. It is doubtful that this shows any such certainty of proof that Manning was negligent as would compel all reasonable minds to so find. This being so, there would exist no basis for us to reverse the trial court on that issue and declare Manning negligent as a matter of law.

However the trial court's judgment is further supported by his finding that the plaintiff was guilty of contributory negligence which barred his recovery. Weenig likewise assails this as error. Since both parties have thoroughly briefed this matter we also address our attention thereto.

The court found that Weenig was traveling at a speed greater than that which was safe, reasonable, and prudent under the circumstances, to wit: "46 to 54 m.p.h." and that he turned "but slightly to the right" to avoid the collision. Weenig argues that his speed had nothing to do with causing the impact, based on this reasoning: the fog having reduced the visibility to "from 50 to 100 feet;" and the defendant, having gone the width of his car onto the wrong side of the road, would not have had time, after seeing Weenig, to get back on his right (west) side of the center line before the impact even if he (Weenig) had been traveling at a lawful speed, and thus the

collision would have occurred anyway. An analysis of the facts does not bear out this contention.

While the area was zoned for 40 miles per hour, such speed limit is subject to modification to that speed which is "reasonable and prudent under the conditions."[4] There is evidence that because of the reduced visibility due to fog, the maximum speed at which one could safely drive was 25 m.p.h. However, Manning testified that he could see Weenig's truck at 75 to 100 feet. Taking 75 feet, the estimate least favorable to Manning, the facts would work out thus: If Weenig had been traveling at a safe speed (25 m.p.h.) and Manning at 30 m.p.h. (his admitted speed), in the three quarters of a second reaction time, Weenig would travel about 27 feet and Manning about 33 feet, a total of 60 feet, leaving 15 feet in which Weenig could have turned to his right sufficient to have missed Manning. According to Weenig's own testimony Manning was the width of his car on the wrong side of the road when Weenig first saw him. Weenig says "I applied the brakes and swerved to the right." If this were so, it is difficult to see how the collision occurred. The officer's measurements show Manning's left front wheel only 3 feet east of the center line, so Manning had moved 3 feet westerly between the time Weenig first saw him and the moment of impact. If Weenig had done likewise (moved his car 3 feet to his right) he would have missed Manning's coupe which is slightly less than 6 feet wide, and this is allowing for Weenig to have been driving with his left wheel on the center line when the emergency arose. The cars overlapped only slightly as is indicated by the fact that Mannings's coupe was not extensively damaged, and this along its left side.

It was Weenig's duty to keep a lookout ahead for other vehicles on the highway, to keep his car under safe and immediate control, and to use reasonable care in avoiding other vehicles. Weenig's contention seems to ignore the fact that Manning's vehicle, being only 3 feet over the center line, left Weenig 8 feet of surface and 7 feet of hard shoulder upon which to veer to the right to avoid the crash, which a reasonable mind could believe he did not use to the best advantage.

It thus appears that there is a valid basis for the trial court to believe that if Weenig had been traveling at a safe and lawful speed and had used due care in trying to avoid Manning's car, the accident would not have occurred. Such conclusion, being supported by substantial evidence and not being unreasonable, we affirm the judgment. Costs to respondent.

McDONOUGH and WADE, JJ., concur.

HENRIOD, J., concurs in the result.

WOLFE, Chief Justice (concurring in the result).

I concur in the result on the ground that there is evidence from which the trial court

sitting as the finder of the facts could have reasonably found the plaintiff guilty of actionable negligence barring his recovery.

As to whether the trial court could have reasonably found the defendant free from negligence, a more difficult question is presented. It may be that in certain instances a driver must edge over the center of a two lane highway before he can determine whether he can safely pass a truck traveling ahead of him which is obstructing his view of the highway ahead. But in most instances it would seem that by allowing the truck to move a short distance further ahead, the driver's angle of vision would be such that he could see the highway ahead without invading the other lane of traffic. However, in those few instances when it may be necessary to cross the center of the highway to ascertain whether it is safe to pass, it should be enough to edge over the center only slightly. Unless the bed of the truck ahead actually hung over the center of the highway, a driver seated against the left front door of his automobile could get a view of the highway ahead by edging out a very short distance.

In the instant case, according to the defendant's own testimony, he did not merely edge slightly over the center of the highway. He swung his vehicle onto the other side of the highway six or seven feet and was in that position when he first saw the headlights on the plaintiff's truck approaching him. He then proceeded to return to his own side of the highway, but was struck when he was still three feet over the center of the highway in the lane of traffic for vehicles traveling in the opposite direction. He testified his automobile was six feet wide and that it could have been entirely on his left side of the road when he first observed the plaintiff's headlights. Thus it appears to me that the defendant actually invaded the other lane a considerable distance further than was necessary, making impossible his complete return to his own side of the highway when he observed the plaintiff approaching. But inasmuch as it is unnecessary to decide in this case whether the defendant's conduct constituted negligence as a matter of law, I reserve my opinion on that matter.