367 P.2d 464

Dennis W. LYNCH, Plaintiff and Appellant,

v.

Arch MacDONALD et al., Defendants and Respondents, and Cross Appellants,

and

Nicholas G. Morgan, Sr., and Nicholas G. Morgan, Sr., Charitable Foundation, a corporation, Defendants, Counterclaimants and Appellants.

No. 9406.

Supreme Court of Utah.

Jan. 2, 1962.

Elias Hansen, Salt Lake City, for appellant.

Ben D. Browning, Salt Lake City, for respondent.

RUGGERI, District Judge.

Initially this was an action by the appellant, the plaintiff below, Dennis W. Lynch, as assignee of the Sierra Madre Oil Company, to quiet the title, against the claims of the several defendants, in and to the sum of $13,824.67 held in escrow by the Security Title Company, a corporation, and praying that he be adjudged the owner and entitled to the immediate possession of said money. The defendants Merton E. Baird and George A. Chase, Jr. filed an answer and counterclaim, together with a cross-claim against their co-defendants Arch MacDonald, A. L. Branden, William A. Brown, Nicholas G. Morgan, Sr. Charitable Foundation, a Utah corporation, Nicholas G. Morgan, Sr., Security Title Company, a corporation, and Branden Enterprises. The defendant Security Title Company filed a separate answer. The defendants Arch MacDonald, A. L. Branden and Branden Enterprises filed an answer and counter-claim, and cross-claims against their co-defendants William A. Brown, Merton E. Baird, George A. Chase, Jr., Security Tittle Company, Nicholas G. Morgan, Sr.; and Nicholas G. Morgan, Sr. Charitable Foundation, a Utah corporation. Nicholas G. Morgan, Sr. and Nicholas G. Morgan, Sr. Charitable Foundation filed an answer and a counterclaim against the defendants Arch MacDonald, A. L. Branden and Branden Enterprises. Responsive pleadings were filed by the respective parties to the alleged counterclaims and cross-claims. William A. Brown defaulted.

The pleadings in this case, as might be surmised from the foregoing, are somewhat involved, and the transcript of the voluminous evidence produced at the trial consists of three volumes constituting 514 pages of testimony, together with some forty documentary exhibits.

For the sake of clarity, unless otherwise designated, a reference herein to Morgan includes Nicholas G. Morgan, Sr., and Nicholas G. Morgan, Sr. Charitable Foundation, a Utah corporation, because he, Nicholas G. Morgan, was its president and acted for it throughout this transaction. For the same reason a reference to Doc MacDonald includes Sierra Madre Oil Company, a California corporation, duly qualified to do business in Utah. A reference to respondents ordinarily means Arch MacDonald (not related to Doc MacDon-

ald), A. L. Branden and Branden Enterprises.

The trial court dismissed with prejudice the complaint of the plaintiff, Dennis W. Lynch; the counterclaim and all claims of the defendants Nicholas G. Morgan, Sr., and Nicholas G. Morgan, Sr. Charitable Foundation; the counterclaim and cross-claims of the defendants Merton E. Baird and George A. Chase, Jr.; and the counterclaim of the defendants Arch MacDonald, A. L. Branden and Branden Enterprises against the plaintiff Dennis W. Lynch. The defendant Security Title Company was awarded $500.00 attorneys fees pursuant to stipulation of respective counsel, and said sum to be deducted and paid from the funds held by it in escrow.

The trial court concluded that the respondents, and cross-appellants, Arch MacDonald, A. L. Branden and Branden Enterprises were entitled to judgment against all parties to the action for the sum of $13,826.54 held in escrow by the Security Title Company, subject to the payment and deduction therefrom of the aforementioned $500.00 attorney's fee; and that the said respondents and cross-appellants were entitled to judgment against Nicholas G. Morgan, Sr., and Nicholas G. Morgan, Sr. Charitable Foundation for the sum of $96,785.78, together with interest thereon at the rate of 6% per annum from the date of payment to date of judgment amounting

to the sum of $17,476.26, and costs; providing, however, that said amounts be decreased by the amount to be paid to them by the Security Title Company from the balance of funds held by it in escrow as aforesaid.

From the said judgment, Nicholas G. Morgan, Sr. and Nicholas G. Morgan Sr. Charitable Foundation appealed; and Arch MacDonald, A. L. Branden, and Branden Enterprises cross-appealed. Merton E. Baird, George A. Chase, Jr., and the Security Title Company did not appeal.

The fundamental facts of this case, as found by the lower court, are as follows:

In February or March of 1957, in California, the respondents entered into a joint venture with Doc MacDonald, whereby it was orally agreed that the respondents would finance selected and agreed upon undertakings for the exploration for oil and gas, and that from any monetary returns obtained therefrom, the expenses and finances advanced by respondents would first be repaid to them, and any returns from the venture thereafter would be divided between the respondents and Doc MacDonald, who represented himself to be a highly experienced and competent geologist. Morgan had actual and constructive knowledge of this agreement for a joint venture at all times material to this case.

In early April of 1957, in Salt Lake City, Doc MacDonald learned from Merton E.

Baird and George A. Chase, Jr., copartners and real estate brokers, that Morgan held certain federal oil and gas leases of acreage available for exploration and development, which could be obtained for a price of $4.00 per acre with specified reserved royalties and subject to an obligation to drill the acreage.

Doc MacDonald returned to California and there proposed a joint venture with respondents for the acquisition and development of this acreage, representing to the respondents, his coadventurers, that the price per acre was $7.00 with a drilling commitment. Upon his return to Salt Lake City, Doc MacDonald met with Morgan and informed him that the respondents were interested in the acreage, and that he had quoted them a price of $7.00 per acre, rather than $4.00 per acre, and that the $3.00 per acre differential to be paid by his coadventurers, the respondents herein, was to be paid to him without their knowledge.

On or about May 16, 1957, the respondent Arch MacDonald met in Salt Lake City with Morgan, Doc MacDonald and George A. Chase, Jr., in the office of Morgan. At this meeting, Morgan quoted the firm price per acre, as $7.00, and did not inform the respondent, Arch MacDonald, that his (Morgan's) price was $4.00 per acre, and that $3.00 per acre was secretly going to Doc MacDonald. At that meeting the respondent Arch MacDonald specifically asked if Doc MacDonald was getting any part of the $7.00 per acre purchase price, explaining that he, Arch MacDonald, A. L. Branden and Branden Enterprises, did not know anything about the oil and gas business; that they were relying solely upon the recommendation of Doc MacDonald; and that they did not want his judgment colored or influenced by any participation in the purchase price of the acreage covered by the leases.

Morgan denied that Doc MacDonald was receiving any part of the purchase price.

On or about May 22, 1957, contracts were entered into between Morgan and Sierra Madre Oil Company which obligated Sierra Madre Oil Company to pay Morgan for the acreage under discussion, at the rate of $7.00 per acre, the total sum of $96,785.78, payable in seven equal monthly installments of $13,826.54, with the first payment falling due on June 6, 1957. That contract was placed in escrow with the Security Title Company. For the convenience and at the request of the respondents, the contract was made, and title to the leases taken, in the name of Sierra Madre Oil Company, and the respondents, who were disclosed principals in the transaction, and they alone, paid the full sum of $96,785.78 pursuant to the terms of said contract. In addition, and in fulfillment of the drilling commitment required under the said contract, the respondents, and they alone, ex-

pended the further sum of $207,254.91 in conformity with their oral joint-venture agreement had with Doc MacDonald.

The representation of Doc MacDonald to the respondents, his coadventurers, that the purchase price of the Morgan leases was $7.00 per acre, was palpably false. The representation of Morgan to the respondent Arch MacDonald, whom he knew to be one of Doc MacDonald's coadventurers, that he would not accept less than $7.00 per acre for the selected leases held by him, was manifestly fraudulent. The evidence is undisputed that Morgan's price was $4.00 per acre rather than $7.00 per acre, and that the differential of $3.00 per acre was to be surreptitiously paid to Doc MacDonald. In truth and in fact, Morgan without the knowledge of respondents secretly paid to Doc MacDonald $27,653.08, and would have paid him the additional sum of $13,826.64 but for the fact that payment of the same was withheld by the Security Title Company, under the terms of its escrow agreement, subject to a determination by a court of competent jurisdiction as to the rightful owner of the same.

The appellants assail the findings of the trial court that the respondents were the victims of a fraud perpetrated upon them by their coadventurer, Doc MacDonald, assisted, aided and abetted by Morgan, and contend that the findings are without support in the evidence, or that there is no substantial evidence to support them.

Judgment in this case was rendered in part on conflicting evidence. It is therefore our duty to review the evidence in a light most favorable to the findings of the trial court. Weenig v. Manning, 1 Utah 2d 101, 262 P.2d 491; Parrish v. Tahtaras, 7 Utah 2d 87, 318 P.2d 642. While some of the testimony in the instant case is admittedly conflicting, and not in complete harmony with testimony given in a companion case, (Chase v. Morgan, 9 Utah 2d 125, 339 P.2d 1019), we find that there is ample, competent, substantial, clear and convincing evidence to support the fact that neither Morgan, Doc MacDonald, the appellant Dennis W. Lynch, or any one else involved in this cause, and all of whom were familiar with the true facts, and the fiduciary relationship existing between respondents and Doc MacDonald, ever informed the respondents that the purchase price of the acreage in question was $4.00 per acre rather than $7.00 per acre, and that an agreement existed that $3.00 per acre would revert to Doc MacDonald. It can well be said that Morgan consistently equivocated in his testimony, but that essentially he repeatedly admitted that at no time did he inform the respondents of the kick-back to Doc MacDonald. As for Doc MacDonald himself, he testified that it was none of respondents' business, and

that if he was smart enough to buy something for $4.00 and to sell six per cent of it for $7.00, that he thought that was just good business.

■ The representation was directly made to the respondents that Morgan's price for the acreage in question was $7.00 per acre rather than $4.00 per acre, and the fact that Morgan's price for the acreage was truthfully $4.00 per acre rather that $7.00 per acre was deliberately and artfully withheld from the respondents by both Doc MacDonald and Morgan; such representation and concealment was of a material fact which was false and known to be false; and the respondents, acting reasonably and in ignorance, relied upon such false representation and entered into the contract, to their damage, for the purchase of such acreage without knowledge that their coadventurer, Doc MacDonald was secretly to receive $3.00 per acre. All of the essential elements of actionable fraud were present. Pace v. Parrish, 122 Utah 141, 247 P.2d 273.

■ The relationship between joint adventurers is fiduciary in character, and imposes upon all the participants an obligation of loyalty and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to the matters pertaining to the enterprise. 30 Am.Jur. Joint Adventures, # 48, page 974. The failure of one of the several joint adventurers, in an enterprise looking to the purchase of property, to share with his coadventurers any secret advantage given by their vendor for inducing the purchase by the other coadventurers, has been held such a breach of confidence as amounts to constructive fraud, and will entitle his coadventurers to maintain an action for damages for fraud and deceit against either or both parties to the secret understanding. Menefee v. Oxnam, 42 Cal.App. 81, 183 P. 379. It has also frequently been held that one who knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits. Fink v. Weisman, 129 Cal.App. 305, 18 P.2d 961, 965, and cases therein cited. See also Fink v. Weisman, 132 Cal.App. 724, 23 P.2d 438 on rehearing.

■ A careful reading of the entire record establishes by clear, satisfactory and convincing proof that the respondents were the victims of a fraud perpetrated upon them by their coadventurer, Doc Mac-Donald, assisted by Morgan, who knowing all the facts, actively aided and abetted Doc MacDonald in the consummation of this fraud. Morgan, therefore, was as much guilty as was Doc MacDonald. Menefee v. Oxnam, supra. Where the findings and judgment are supported by the degree of proof mentioned they cannot be disturbed on appeal. See Pace v. Parrish, supra.

■ It is the contention of the appellants that the trial court was without jurisdic-

tion to determine that respondents were entitled to the money held in escrow by the Security Title Company because it did not have jurisdiction of an indispensable party, to-wit, Sierra Madre Oil Company, the assignor of the appellant, Dennis W. Lynch. This contention is without merit.

The appellant, Dennis W. Lynch, by virtue of his assignment from Sierra Madre Oil Company, prosecuted this action in his name, and he was, as plaintiff, the real party in interest. Rule 17(a), Utah Rules of Civil Procedure. The general rule is that an assignee is the real party in interest. Moore's Federal Practice, Vol. 3, p. 1339, #17.09; Perkes v. Utah Idaho Milk Co., 85 Utah 217, 39 P.2d 308; Nelson v. Smith, 107 Utah 382, 154 P.2d 634, 157 A.L.R. 512; Chesney v. District Court of Salt Lake County, 99 Utah 513, 108 P.2d 514; Campbell v. Peter, 108 Utah 565, 162 P.2d 754. The defenses interposed by the respondents in this action could be asserted against the assignee. Rule 13(j), Utah Rules of Civil Procedure.

As indicated at the outset of this opinion, Sierra Madre Oil Company was the alter ego of Doc MacDonald its president, who himself testified that in effect he and the Sierra Madre Oil Company were one and the same. Because of the fraud perpetrated upon the respondents by Doc MacDonald, neither Doc MacDonald nor his alter ego the Sierra Madre Oil Company, has or can assert an enforceable claim against the money which is the subject of this action. Furthermore, Morgan is jointly liable with Doc MacDonald for his fraud and deceit in knowingly aiding and abetting Doc MacDonald, a fiduciary of the respondents, in making a secret profit; Fink v. Weisman, supra, Menefee v. Oxnam, supra; and, as hereinbefore stated, Sierra Madre Oil Company was the alter ego of Doc MacDonald. The liability for the fraud and deceit of Morgan, Doc MacDonald and Sierra Madre Oil Company was joint and several, and both Sierra Madre Oil Company and Doc MacDonald would have been proper parties, but neither was an indispensable party to this action. Joint tort-feasors, whose liability is joint and several, are neither indispensable nor necessary parties. Barron & Holtzoff, Federal Practice and Procedure, Vol. 2, #512, page 104.

The appellant, Dennis W. Lynch, before he acquired the assignment, knew that the assignor, Sierra Madre Oil Company and its president, Doc MacDonald were one and the same; that his assignor and respondents were joint venturers in the acquisition and drilling of the lease acreage involved in this suit, and that respondents were financing the venture; and further, the appellant Dennis W. Lynch was familiar with the machinations of Doc MacDonald in securing for himself a secret profit at the expense of the respondents. As for the appellant's, Dennis W. Lynch's, contention

Producing.

---

that he personally had money due from his assignor and Doc MacDonald, the trial court heard ample evidence from which to find that such alleged claim was not substantiated; and we conclude that the trial court was not in error in dismissing the complaint of the appellant, Dennis W. Lynch, for failure of proof, and because appellant's assignment was subject to the defenses asserted against his assignor.

As a part of the agreement arrived at on or about May 16, 1957, between the respondents and the appellants, which agreement has been hereinbefore mentioned, it was agreed that Morgan should have an overriding royalty of 3% on all oil and gas produced and sold as a result of the contemplated drilling of the land covered by the leases, and that the respondents, acting through the Sierra Madre Oil Company, in which name they contracted with Morgan as heretofore stated, would pay all rentals owing and to become owing to the United States on the leases; and that if the respondents desired to surrender the leases, or any part thereof, they would, not less than sixty days prior to the anniversary date of said leases, notify the lessor of such intention, and by an instrument in writing reassign in quintuplicate the leases desired to be surrendered. The annual rentals which became due on July 1, 1958 were not paid by the respondents, and the leases were forfeited to the United States and lost to Morgan. Mogan filed a cross-claim against the respondents for the sum of $96,800.00, the alleged market value of the said leases, and the trial court dismissed the claim with prejudice. The appellants predicate alleged error on this ruling.

The trial court found that the respondent Arch MacDonald gave verbal notice to one Virgil Peterson, agent for Morgan, on or about April 24, 1958, at the time he first discovered the fraudulent conduct of the appellants, that the respondents were not going further with the transaction; and the trial court further found that the appellants were the first to breach the aforesaid agreement between the parties by their fraudulent connivance continuing beyond the inducement and inception of the agreement. We sustain the finding, the judgment of the trial court correct in its dismissal of Morgan's cross-claim for $96,800.00. There was evidence to support the fact that notice was given to Morgan that the respondents would not pay the next annual rentals, and, at least by reasonable inference, that Morgan did not expect such rentals to be paid by the respondents. Regarding the fraud, of which we have found ample evidence as existing at the time of the execution of the contract, and its concealment thereafter, as a breach, it has been said that the party who commits the first breach of contract cannot maintain an action against the other for a subsequent failure to perform; 12 Am.Jur.; Contracts, #338, page 894; and that fraud is an excuse for non-

performance of an agreement. 12 Am.Jur; Contracts, #361, page 928.

Appellants contend that the trial court erred in rendering judgment in favor of respondents against all parties to this action for the sum of $13,826.54 held in escrow at Security Title Company, subject to the payment of $500.00 as an attorney's fee as stipulated by respective counsel; and against Nicholas G. Morgan, Sr. and Nicholas G. Morgan Charitable Foundation for the sum of $96,785.78, together with interest and costs, but reduced by the amount to be paid by the Security Title Company as aforesaid. Again the findings of the trial court are grounded upon the fraud perpetrated upon the respondents, and which findings we have already agreed were supported by ample, competent evidence. Morgan, in order to dispose of his leases at his own price of $4.00 per acre, gave his sanction and approval to the extraction of an additional $3.00 per acre from Doc MacDonald's coadventurers; and Morgan not only failed in the first instance to disclose the deceit, but actively persisted in concealing it; permitted the respondents to pay him $96,785.78 as the purchase price of the leases; secretly paid over to Doc MacDonald $27,653.08 of this money, and apparently would have paid him the additional sum of $13,826.54 if the same had not been impounded by the Security Title Company under the protective terms of its escrow agreement.

The respondents would have paid $41,479.72 less for the leases if Doc MacDonald had been faithful to his trust, and if Morgan had not actively misrepresented the purchase price to respondents and thereby rendered himself jointly liable with Doc MacDonald. As a party to the fraud of which the respondents were the victims, Morgan is liable for the natural and direct or proximate consequences of his wrongful acts and omissions, and but for this wrong ful misrepresentation and concealment of the true selling price of his leases, the respondents would have paid but $55,306.16 for Morgan's leases. The loss to the respondents of $41,479.72 resulted in the natural course of events, and must be deemed to have been within the contemplation of Morgan as the certain consequence of his active participation and furtherance of the fraud. 25 C.J.S. Damages § 18. The damages naturally and directly resulting to the respondents herein, because of the fraud and deceit practiced upon them by Morgan, is the difference between the amount actually paid by the respondents for the Morgan leases and what they would have paid had Doc MacDonald and Morgan dealt honestly with them. Fink v. Weisman, supra. Respondents are entitled to have and recover judgment against all parties to this action for the sum of $13,826.54 held in escrow at Security Title Company, subject to the payment and deduction therefrom of $500.00 as an attorney's fee as

stipulated by respective counsel in the trial court; and against Nicholas G. Morgan, Sr. and Nicholas G. Morgan, Sr. Charitable Foundation for the sum of $41,479.72, together with interest thereon at the rate of 6% per annum from the date of the respective payments as made by the respondents to date of judgment, but reduced by the amount to be paid by the Security Title Company as aforesaid.

 The respondents filed a cross-appeal from the judgment of the trial court denying them the sum of $207,254.91 expended by them in drilling the acreage under discussion herein. The above stated conclusions of this court with respect to the measure of respondents' damages herein renders it unnecessary to consider this further and additional claim on their part, and the judgment of the trial court in this particular is sustained.

The appellants herein set out eleven points, amplified by numerous subdivisions, upon which they rely for a reversal of the judgment appealed from. All of said points have received the careful consideration of this court, and no useful purpose would be served by detailed further comment on each of such points which are so intimately related as to only breed repetition. The foregoing opinion reaches and covers all the essential points raised.

The foregoing discussion indicates that the judgment of the trial court is affirmed in all particulars except as to the amount of respondents' recovery; and the cause is remanded with directions to the court below to modify the judgment by reducing the amount of respondents' recovery from $96,785.78 to $41,479.72. From the latter figure there is to be deducted the $13,826.54, held in escrow less the $500 attorney fee allowed, or $13,326.54 to be deducted therefrom, resulting in a judgment of $28,153.18, plus interest thereon. No costs on appeal awarded.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, Justice having disqualified himself, does not participate herein.