**EMPIRE LAND TITLE, INC., aka Empire Title Company, Plaintiff and Appellee,**

v.

**WEYERHAEÜSER MORTGAGE COMPANY, Defendant and Appellant.**

No. 890171–CA.

Court of Appeals of Utah.

Aug. 31, 1990.

Donald J. Winder and Lincoln W. Hobbs (argued), Winder & Haslam, P.C., Salt Lake City, Attorneys at Law for defendant and appellant.

Thomas W. Seiler (argued), Mark F. Robinson, and Claude E. Zobell, Jr., Robinson, Seiler & Glazier, Provo, for plaintiff and appellee.

Before BENCH, DAVIDSON and ORME, JJ.

## OPINION

DAVIDSON, Judge:

This case involves a dispute over an invalid mortgage assumption agreement. In March 1982, the mortgage foreclosure department of Weyerhaeuser Mortgage Company ("Weyerhaeuser") initiated foreclosure proceedings on a tract of land located in American Fork, Utah.[1] Weyerhaeuser successfully completed the foreclosure and received a trustee's deed evidencing ownership. In August 1982, Weyerhaeuser's assumption department, not knowing that its foreclosure department had previously foreclosed the property, entered into negotiations with a potential purchaser. At that time, the assumption department erroneously believed that P. Scott Construction Company ("Scott") was the record owner of the property. The assumption department also believed that Scott was in default on its loan. As a result, a Kelly Wilson ("Wilson") agreed to purchase the property by assuming Scott's mortgage. Wilson retained Empire Land Title, Inc. ("Empire"), the appellee, to act as its escrow agent. Empire also believed that the assumption arrangement was valid since its title search failed to reveal the previous foreclosure.

In September 1982, after the preliminary negotiations were completed, Weyerhaeuser delivered a beneficiary statement to Empire. The beneficiary statement set forth the terms of the assumption agreement and payment requirements. After receiving this document, Empire delivered a check to Weyerhaeuser for $5,473.04, the amount necessary to cover arrearages and assumption fees.[2] After Weyerhaeuser received the payment, a warranty deed was given to Wilson. No subsequent payments were made to Weyerhaeuser and a tenant named Papworth continued to occupy the premises.

In April 1984, Wilson discovered that the property had been previously foreclosed by Weyerhaeuser. Wilson notified Empire, and Empire paid Wilson a money settlement. Wilson assigned his claims against Weyerhaeuser to Empire and Empire then sued to collect the $5,473.04 it had paid. The trial court ⁼ruled in Empire's favor.[3] Weyerhaeuser appeals, raising several issues.

1. Mason–McDuffie Investment Co., a company owned by Weyerhaeuser, actually foreclosed the property. Defendant's counsel acted as successor trustee, completed the foreclosure proceedings, and recorded the trustee's deed. Weyerhaeuser concedes that at the time the assumption agreement was executed, it had legal notice of the previous foreclosure.

2. The mortgage assumption agreement required the buyer to pay arrearages totalling $3,621, $72.42 in late charges, $45 in transfer fees, $51.96 reserve shortage fees, and $1,682.66 in bankruptcy fees. The assumption fees totalled $5,473.04. The agreement also required the buyer to pay a mortgage payment of $213 per month.

3. In its first claim for relief, Empire alleged that it complied with all the terms of the written beneficiary statement by delivering a check to Weyerhaeuser for $5,473.04. Empire also alleged that Weyerhaeuser breached the beneficiary statement by failing to perform the assumption. In its second claim, Empire claimed that Weyerhaeuser was unjustly enriched in the amount of $5,473.04.

## STATUTE OF LIMITATIONS

Weyerhaeuser first contends that the action is barred by the statute of limitations. It argues that the beneficiary statement and check issued by Empire are insufficient to bring Empire's action within the six-year statute of limitations for actions founded on written instruments. It instead argues that the controlling statute is the four-year statute for oral contracts or the three-year statute for mistake. Empire filed suit four years and seven months after Weyerhaeuser attempted to transfer title.

■ "An action upon any contract, obligation, or liability founded upon an instrument in writing ..." must be brought within six years from the date of occurrence. Utah Code Ann. § 78–12–23(2) (1987). The Utah Supreme Court has stated the test for determining if a written instrument falls within the six-year statute of limitations: "[I]f the fact of liability arises, is assumed, or imposed from the instrument itself, or its recitals, the liability is founded upon the instrument in writing." *Brigham Young Univ. v. Paulsen Const.*, 744 P.2d 1370, 1372 (Utah 1987) (quoting *Bracklein v. Realty Insurance Co.*, 95 Utah 490, 500, 80 P.2d 471, 476 (1938)).

■ Empire asserts liability based upon the beneficiary statement. It alleges in the complaint that "pursuant to Plaintiff's request, Defendant delivered a written beneficiary statement to Plaintiff setting forth the amount of money necessary for assumption of a mortgage loan owned and held by Weyerhaeuser Mortgage Company." It further alleges that Weyerhaeuser breached the agreement by "failing to effect the assumption intended by the Beneficiary Statement."

The beneficiary statement contained the complete terms of the assumption agreement. It itemized the assumption charges including all fees and arrearages, specified the interest rate, listed the monthly payment, and defined the principal balance remaining to be paid on the mortgage. The beneficiary statement "shows a liability to pay" on its face. *See Bracklein*, 95 Utah at 500, 80 P.2d at 476. The terms of that statement contain the contractual terms and conditions of the entire agreement between the parties. The beneficiary statement constitutes an instrument in writing within the scope of the six-year statute of limitations of section 78–12–23. *See Paulsen Constr.*, 744 P.2d at 1372; *Bracklein*, 95 Utah at 500–01, 80 P.2d at 476. *See also Sanwick v. Puget Sound Title Ins. Co.*, 70 Wash.2d 438, 423 P.2d 624, 628 (1967) (written escrow instructions, which were followed by the parties, fall within statute of limitations relating to written instruments); *Amen v. Merced County Title*, 58 Cal.2d 528, 25 Cal.Rptr. 65, 67, 375 P.2d 33, 35 (1962) (written escrow instructions, which induce performance, fall within statute of limitations pertaining to written instruments).

Even if the parties previously discussed the terms of the agreement, which Weyerhaeuser argues demonstrates the agreement was an oral contract, the written statement confirmed the agreement and specified its terms. Thus, this obligation is not an oral contract. *See Evans v. Pickett Bros. Farms*, 28 Utah 2d 125, 127–28, 499 P.2d 273, 275 (1972) (written instrument specifying amount of payment, which was executed after work was completed, is an obligation founded upon a written instrument within section 78–12–23).[4]

## IMPLIED CONTRACT—FAIR RENTAL VALUE

■ Weyerhaeuser next argues that if the beneficiary statement is considered a written instrument, it automatically binds Empire, as successor to Wilson, to make payments of $213 per month. Alternatively, Weyerhaeuser argues that Empire is liable for the fair rental value of the prop-

[4]. There also can be no mutual mistake since Weyerhaeuser concedes that it had legal notice of the previous foreclosure completed by its own mortgage foreclosure company. *See Langston v. McQuarrie*, 741 P.2d 554, 557 (Utah Ct. App.1987) ("A mutual mistake occurs when *both* parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they base their bargain.") (emphasis added).

erty during the time it was occupied by Wilson's tenant.

Although the writing forms the basis for application of the six-year statute of limitations, it does not necessarily create a binding bilateral contract. At the time the assumption agreement was executed, Weyerhaeuser had no ability to allow an assumption of the property because there was no mortgage to assume. Its foreclosure division had previously foreclosed the property, obtained and recorded a trustee's deed. Thus, at the time of the attempted assumption by Wilson, Weyerhaeuser could not perform its part of the bargain. *See Copper State Leasing Co. v. Blacker Appliance*, 770 P.2d 88, 91 (Utah Ct.App.1988). The assumption agreement was thus a nullity. That Weyerhaeuser mistakenly allowed Wilson to control the property gives rise to no cause of action for implied contract or fair rental value against Empire. Weyerhaeuser's remedy in this regard would be against Papworth and, indeed, such an action was apparently commenced, albeit without success.

## JOINDER OF PARTIES

Weyerhaeuser also claims that others including Scott, Wilson, Empire's errors and omissions carrier, and Papworth should have been joined as real parties in interest under Rule 17(a), Utah R.Civ.P., or as indispensable parties under Rule 19, Utah R.Civ.P. This argument is without merit. Empire paid Weyerhaeuser pursuant to the terms of the beneficiary statement. Even if Wilson originally paid the assumption money to Empire, the trial court found that Empire settled all claims with Wilson and Wilson specifically assigned his cause of action against Weyerhaeuser to Empire. *See Lynch v. MacDonald*, 12 Utah 2d 427, 434, 367 P.2d 464, 468 (1962) (assignee is the real party in interest). Weyerhaeuser has cited no authority to persuade us that the other parties are real parties in interest, or that complete relief cannot be afforded in the absence of these parties.

## ATTORNEY FEES

■ Weyerhaeuser also complains that an award of attorney fees should not have been made to Empire. We find error in the award of attorney fees. There is no basis in either the beneficiary statement or any statute which allows Empire to collect attorney fees. *See Dixie State Bank v. Bracken*, 764 P.2d 985 (Utah 1988). Accordingly, there is no legal basis for an award of fees.

## CONCLUSION

We find the remaining issues raised by Weyerhaeuser to be without merit. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989) (appellate court retains discretion to address only those issues which are determinative and critical to the appeal). We affirm the trial court except for its award of attorney fees, which award is vacated in its entirety.

BENCH and ORME, JJ., concur.