**KELEMETE MISIPEKA, Plaintiff,**

**v.**

**THE LEGISLATURE OF AMERICAN SAMOA, Defendant.**

High Court of American Samoa
Trial Division

CA No. 05-03

May 5, 2003

Before RICHMOND, Associate Justice, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Plaintiff, *Pro Se*
For Defendant, Robert K. Maez.

## ORDER GRANTING PLAINTIFF AND DENYING DEFENDANT SUMMARY JUDGMENT

Before us are cross-motions for summary judgment. We grant plaintiff's motion and deny defendant's motion.

## I. BACKGROUND

Plaintiff Kelemete Misipeka ("Misipeka") is a resident of American Samoa. He is in the business of supplying sound systems. In the past, he has worked for the Teuila and Mosooi Festivals, the 1997 South Pacific Mini-Games, and the 1998 Miss Americans Samoa Pageant. In 1998, Misipeka provided sound system services to Defendant Legislature of American Samoa ("Legislature") for the festivities of the Fono Golden Jubilee held in honor of the Legislature's 50th anniversary. He purportedly made an oral agreement with Senator Moaali`itele Tu`ufuli ("Senator Moaali`itele"), the Chairman of the Fono Golden Jubilee Committee.

The festivities spanned six days and included performers of all types. Misipeka was responsible for accommodating the various audio applications including instrumental hook-ups, extra speakers and special microphones. Additionally, Misipeka assisted KVZK, the local television provider, in broadcasting both live and recorded television feeds.

After the festivities ended, Misipeka sent a detailed invoice to Senator Moaali`itele. The total amount due was for $33,090. On October 30, 1998, the invoice was initialed and approved for payment by Senator Moaali`itele. Legislative Financial Officer, Velega Savali certified payment on October 21, 2002. Despite the seeming approval of Misipeka's invoice, he was not paid. He contacted the Legislature and numerous attempts were made to settle the matter. These efforts, however, were to no avail; the Legislature, for one reason or another, refused to pay Misipeka for his services.

Understandably, after years of trying to collect, Misipeka's frustration pushed him to file this suit. Normally, this would be a simple contract dispute ripe for resolution. However, it is complicated by one glaring defect. The original contract between Misipeka and the Legislature—specifically with Senator Moaali`itele, as chairman of the Jubilee committee—was not put in writing. The only writing evincing any agreement is the invoice Misipeka subsequently sent to the Legislature.

Both parties have moved for summary judgment. The Legislature, in seeking to avoid payment, argues that the only agreement that existed, if any, was the verbal agreement between Senator Moaali`itele and Misipeka. If true, the consequence of such an agreement would be dismissal of the suit because the statute of limitations has run. *See* A.S.C.A. § 43.0120(3) (three year statute of limitation on unwritten contracts). In the alternative, the Legislature posits that even if there was a written agreement, the only officers that can bind the Legislature are the President of the Senate and the Speaker of the House ("the binding

officers"). Neither of the binding officers, however, signed or initialed Misipeka's invoice.

Misipeka, on the other hand, argues that the invoice he sent, initialed and approved by Senator Mo'aali'itele (and Velega Savali), constitutes a written contract that extends the statute of limitations to 10 years. *See* A.S.C.A. § 42.0120(5). Furthermore, Misipeka contends that it is possible to contract generally with the Legislature through agents other than the binding officers. Indeed, he responded to the solicitation on behalf of the Legislature, generally, and Senator Moaali'itele, as Chairman of the Jubilee Committee, specifically, for his sound system services.

## II. STANDARD

Summary judgment is appropriate when there is "no genuine issue as to any material fact." T.C.R.C.P. 56(c); *Plaza Dep't Store v. Dunchnak*, 26 A.S.R. 2d 82, 83 (Trial Div. 1994). The pleadings and supporting documents are viewed in the light most favorable to the non-moving party. *See Amerika Samoa Bank v. United Parcel Serv.*, 25 A.S.R.2d 159, 161 (Trial Div. 1994); *Ah Mai v. Am. Samoa Gov't (Mem.)*, 11 A.S.R.2d 133, 136 (Trial Div. 1989). Furthermore, as in this case, "disputed 'legal questions . . . present nothing for trial and [are] appropriately resolved on a motion for summary judgment.'" *Flair Broad. Corp. v. Powers*, 733 F. Supp. 179, 184 (S.D.N.Y. 1990) (quoting *Holland Indus. v. Adamar of New Jersey, Inc.*, 550 F. Supp. 646, 648 (S.D.N.Y. 1982)).

## III. DISCUSSION

### A. Written or Unwritten Contract

The crux of this case comes down to one question: was the contract between Misipeka and the Legislature written or unwritten? The importance of this question derives from our statutes of limitations: oral, or unwritten, contracts carry with them a three-year statute of limitations, A.S.C.A. § 43.0120(3), as opposed to written contracts, which can be enforced within 10 years after the action accrues, A.S.C.A. § 43.0120(5). *See generally Pene v. Bank of Hawaii*, 17 A.S.R.2d 168, 170 (App. Div. 1990). Because any contract between the parties was reached approximately five years ago, if it was merely an oral agreement, the suit is subject to dismissal but if it was written, the suit can proceed.

While the definition of a written contract would seem straightforward, applying it to various situations can be difficult. A written contract, for purposes of the statute of limitations, is one "containing all the terms of a completed contract between the two parties [and] is executed by one of the parties and accepted or adopted by the

other." *Id.* at 171, (citing 3 A.L.R.2d 809, 819 (1949)). Put another way, "[a] written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself." *Id.* (quoting *Mills v. McGaffee*, 254 S.W.2d 716, 717 (Ky. 1953)); *see Clark v. Robert W. Baird Co., Inc.*, 142 F. Supp. 2d 1065, 1075 (N.D. Ill. 2001); *Empire Land Title v. Weyerhaeuser Mortgage*, 797 P.2d. 467, 469 (Utah App. 1990); *Urban Dev., Inc. v. Evergreen Building Prods., L.L.C.*, 59 P.3d 112, 119 (Wash. 2003).

■ In the instant case, we need not go beyond the invoice itself to determine "the essential elements of the contract, which include the subject matter, parties, terms and conditions, and price or consideration." *Urban Dev., Inc.*, 59 P.3d at 119; *see Empire Land Title*, 797 P.2d at 469. *But see Clark*, 142 F. Supp. 2d at 1075 (no contract because parole evidence necessary to establish terms of contract). The invoice in this case clearly defines the parties to the contract—Misipeka and the Legislature; both parties signed the contract; the contract was for services rendered at the Jubilee; Misipeka was to provide the sound system for the events of the entire six days; and the price of the services is meticulously documented.

■ The Legislature raises two points in opposition. First, it notes that the document was signed after the event took place and after the services were rendered. However, "a memorandum that memorializes an oral agreement between the parties satisfies the writing requirement" for purposes of the statute of limitations. *Urban Dev., Inc.*, 59 P.3d at 119; *see Evans v. Pickett Bros. Farms*, 499 P.2d 273, 275 (Utah 1972); *cf. Am. Samoa Gov't Employees Fed. Credit Union v. Sele*, 28 A.S.R.2d 21, 23 (Trial Div. 1995) (subsequent memorandum sufficient to satisfy statute of fraud). *But cf., Evans*, 499 P.2d at 276 (Ellett, J., dissenting) (arguing that contract was not in writing for purposes of statute of limitations, though it may have qualified as a writing for purposes of statute of frauds). Again, the question is not when the contract was put in writing, but whether the writing is sufficient to constitute a contract. *See Urban Dev., Inc.*, 59 P.3d at 119.

■ The Legislature also points out that after Senator Moaali`itele had signed the invoice, Misipeka altered portions of it which had originally offered a discount. Misipeka reasons that he did so because the discount was only for prompt payment. The Legislature argues that this act prevented any bargained-for consideration. We disagree with the Legislature's contention. At most, Misipeka's actions create a dispute as to the sum owed. But the fact remains that the invoice clearly shows that a sum is owed, regardless of the amount. That is sufficient to show an element of the contract, even if we now have to interpret the contract and determine how much is due. *See Claxton v. Mains*, 514 N.E.2d 427, 429 (Ohio App. 1986).

## B. Contract with the Legislature

The Legislature's other argument is that even if we find a written contract existed, that contract was between Misipeka and the Senator Moaali`itele. Furthermore, it argues that such a contract is not enforceable against the Legislature since only the binding officers can obligate the Legislature by written agreement. In support, the Legislature cites Legislative internal rules that are, at best, ambiguous.[1] The Legislature's argument is not only self-serving but also specious.

█ But even assuming the Legislature's argument has some merit, it can still be liable under the theory of agency. Nothing prevents the binding officers from delegating their authority to others, or acting in a way to create liability generally. In this case, we find that, at the very least, if the binding officers are truly the only legislators who have the power to contract, they are estopped now from denying the Legislature's liability and shifting the burden solely to Senator Moaali`itele.

We seriously doubt that the binding officers were unaware of Senator Moaali`itele's conduct in organizing the Jubilee celebration. We take judicial notice that Senator Moaali`itele was the Chairman of the Committee, that funds for the event were appropriated, and that the Legislature solicited services from the public for the Jubilee celebration. Furthermore, Misipeka reasonably relied on Senator Moaali`itele's power of the purse. There was ample time and circumstances where the binding officers could have clarified to those dealing with Senator Moaali`itele that only the binding officers could approve their contracts. Instead, the binding officers' inaction and acquiescence to Senator Moaali`itele's conduct carelessly caused Misipeka to rely on the fact that he had entered into a valid contract. *See generally* RESTATEMENT (SECOND) OF AGENCY § 8B (1958).

Otherwise, if we adopt the Legislature's argument, then every contract authorized by Senator Moaali`itele alone in regards to the celebration would be void. Any written contract not entered into by at least one of the binding officers for any procurement of services or sale of goods would be invalid. Such a scheme would lead to preposterous results and bring the government to a screeching halt.

---

[1] For example, the Legislature finds support in that "[t]he Speaker shall approve all expenses for the operation of the House and directly administer the House's budget," *See* House Rule 11(b), and that "[I]t shall be the duty of the President [of the Senate] . . . [t]o do and perform such other duties as are required by law or by these rules, or such as may properly pertain to such office." *See* Senate Rule 8(12).

101

## IV. DAMAGES

Having found that there was indeed a valid, written contract between the parties, we are left only to calculate the damages. In this respect, there are no genuine issues of fact either. The original invoice provided that the amount due was $33,090.00. Misipeka, however, had given the Legislature a 35% discount in honor of the "momentous occasion." Having applied that discount, the total on the invoice came to $21,508.50. It is not disputed that some time after Senator Moaali'itele approved payment, Misipeka, having become disheartened by the situation, unilaterally crossed out the portion of the invoice granting the discount.

Misipeka claims that he did so because the discount was only offered if payment was received in a timely fashion. However, on the invoice, there is no such limiting condition on the granting of the discount. As a matter of law, such unilateral action is not valid and was not agreed upon by the Legislature. We interpret the plain meaning of the contract to reflect that despite late (or no) payment, the Legislature is still privy to the discount and only owes the principle amount of $21,508.50.

## V. ORDER

1. Misipeka's motion for summary judgment is granted. The Legislature's motion for summary judgment is denied.

2. The Legislature shall pay Misipeka $21,508.50, plus statutory interest of 6% annum ($3.547 per day) from October 31, 1998, to May 8, 2003, the date of entry of judgment, in the amount of $5,856.10, for a total amount of $27,364.60, and costs of suit. The Legislature shall also pay Misipeka statutory interest of 6% per annum on the outstanding balance of total amount of judgment, including prejudgment interest and costs of suit, until the judgment is paid in full.

It is so ordered.