NELSON et al., Com'rs of State Bar, et al. v. SMITH et al.

No. 6700. Decided December 18, 1944. (154 P. 2d 634.)

See 7 C. J. S. Attorney and Client, Sec. 58; 5 Am. Jur., 262.

*Brigham E. Roberts* and *L. O. Thomas,* both of Salt Lake City, for appellants.

*Howell, Stine & Olmstead,* of Ogden, for respondents.

WOLFE, Chief Justice.

Suit for an injunction. The defendants demurred to the complaint and the demurrer was sustained. Upon plaintiffs' failure to plead over the complaint was dismissed. The correctness of the ruling on demurrer is questioned by this appeal.

From the complaint it appears that the plaintiffs are the duly elected Commissioners of the Utah State Bar. It is alleged that the defendants, doing business under the assumed name and style of Service Collection Company, are unlawfully practicing law in violation of Section 6-0-24, U. C. A. 1943. The suit is brought to enjoin further unlawful practice of law.

The manner in which the alleged unlawful practice of law is carried on by the defendants is set forth in the complaint in detail. In substance it is alleged that the defendants are by personal contact and by advertising and writing, soliciting from the general public the placement with them (defendants) of various commercial accounts and claims for the payment of money for collection. The defendants agree to proceed to collect the same, to bring suit if necessary, to pay all court costs and furnish all legal services incident thereto in consideration of the agreement by the owners to permit the defendants to deduct and retain for their own use a fixed percentage of any sum recovered. It is alleged that the accepting

and engaging in the collection of such claims is conducted as a business; that claims for collection are accepted both as agent for said persons and as assignee of the claims.

In the process of collecting such claims it is alleged that the defendants have furnished and are furnishing all costs and all legal services incident thereto and "have prepared and filed in various courts of this State, complaints, affidavits, praecipes and other legal documents, and have prepared summons and caused them to be issued and served, and sued out garnishments, attachments and orders to show cause, and have prepared judgments and procured them to be signed and entered by the said Courts, and sued out executions and procured the institution of and have conducted supplementary proceedings and they still continue to do and are now doing all of said acts." The defendants also allegedly hold themselves out to the public as being competent to give and do give legal advice.

The complaint alleges that over .22% of all civil actions brought in the City Court of Ogden, Weber County, during a period of about one year were suits instituted by the defendants in their own names as assignees of the real owner of the claims; that the purported assignments were and are "sham and a fraud upon the court" and have been and are being made purely for the purpose of enabling the defendants to evade and circumvent the provisions of the statutes of the State of Utah relating to the practice of law by persons not licensed to do so.

The prayer is for an injunction to restrain the defendants from soliciting or receiving assignments of claims or accounts for the purpose of suit thereon; furnishing legal service or advice with respect to any such account or otherwise or to represent that they are competent or qualified to do so; instituting, prosecuting, managing or trying any suit upon an assigned account, note or other chose in action of which defendants are not the sole owners of all interest therein, both legal and equitable; instituting, prosecuting, managing or trying any suit or legal pro-

ceeding for any person, firm or corporation other than themselves; agreeing or promising to pay court costs, furnish legal services incident to the bringing of a legal action upon claims assigned for collection; or preparing or filing either by themselves or by an attorney any complaint, process, writ or other legal papers or causing any legal writ or process to be issued or served in any suit or proceeding placed with them for collection or in which any other firm or corporation has any beneficial interest.

Section 6-0-24, U. C. A. 1943 provides:

"Any person not duly admitted and licensed to practice law within this state, or whose right or license to practice therein shall have terminated either by disbarment, suspension, failure to pay his license fee or otherwise, who practices or assumes to act or hold himself out to the public as a person qualified to practice or carry on the calling of a lawyer within this state, is guilty of an offense, and shall be fined not to exceed $500, or be imprisoned for a period of not to exceed six months, or both, and, if he shall have been admitted to practice law, he shall in addition be subject to suspension under the proceedings provided by this title.

"Nothing in this section shall prohibit one unlicensed as an attorney from personally representing his own interest in a cause to which he is a party in his own right and not as assignee; nor shall anything herein contained prevent an unlicensed person, duly elected to the office of county attorney, from performing the duties of such office."

The respondents contend that the statute quoted above is unconstitutional in that it is in conflict with Article I, Section 11 of the Constitution of Utah, which provides:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

In *Ruckenbrod* v. *Mullins*, 102 Utah 548, 133 P. 2d 325, 144 A. L. R. 839, the relationship of the attorney to the

court was discussed in detail. We recognized that the legislature may in the proper exercise of its police powers make reasonable regulations governing the admission and disbarment of attorneys. The practice of law is so affected with the public interest that the state has both a right and a duty to control and regulate it in order to promote the public welfare. To enforce the regulations the legislature has the power to declare acts of unauthorized practice of law to be illegal and to punish violations thereof by fine and imprisonment. In re Opinion of the Justices, 289 Mass. 607, 194 N. E. 313. But aside from any legislative enactment the courts inherently have the power to control and prescribe the conditions upon which one may be admitted as a member of the bar. As we noted in the Ruckenbrod case, supra, courts have retained the ultimate right to control admission to practice and disbarment. By so doing, the courts "have undertaken to protect the honor and high standing of the legal profession by refusing to admit those applicants who lack the necessary educational qualifications or who are morally incompetent, and dropping from the rolls those guilty of misconduct." [102 Utah 548, 133 P. 2d 331.] It was further noted that the attorney has become an indispensable part of our judicial machinery. Persons unlearned in the law can neither aid a litigant nor the court and both the court and the public have an interest in seeing that those who lack the necessary educational and moral standards do not hold themselves out as being competent and qualified to give legal advice and perform legal services preparatory to commencing an action in the court. It is the attorney who first sits as judge of the merits of every case, who decides whether or not suit should be commenced. The court and the public are interested in having that decision rendered by those qualified so to do to avoid, as much as possible, needless litigation and to have those cases upon which suits are deemed advisable properly prepared so that they will move through the process of trial with as few snarls as possible. The public

is directly concerned with the functioning of the machinery set up for the purpose of handling judicial work. In the matter of In re Opinion of the Justices, supra, 289 Mass. 607, 194 N. E. 313, 317, the court noted that:

"No valid distinction, so far as concerns the questions set forth in the order, can be drawn between that part of the work of the lawyer which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the groundwork for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possibility in mind, and otherwise would hardly be needed. In this country the practice of law includes both forms of legal service; there is no separation, as in England, into barristers and solicitors. It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill, of sound moral character, and acting at all times under the heavy trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts. Decisions of the courts, some of which deal with statutes, are unanimous on these points, so far as we are aware. [Citing cases in footnotes.] If these established principles as to the practice of law are ever to be changed, the judicial department of the government must act to that end."

In view of Article I, Section 11 (quoted above) of the State Constitution, no person may be barred from prosecution or defending before any state tribunal by himself or counsel, any civil cause to which he is a party. While this does not give a person appearing in his own behalf any special privileges not accorded to other litigants appearing by counsel, and he is amenable to the administrative powers of the court, the right to appear in person and prosecute or defend a cause to which he is a party cannot be abrogated either by the legislature or the courts. In numerous cases we have held that an assignee is a real party in interest even though the assignment be only for the purpose of suit. See *Wines* v. *Railway Co.*, 9 Utah 228, 33 P. 1042; *Rutan* v. *Huck*, 30 Utah 217, 83

P. 833; *Baglin* v. *Earl-Eagle Mining Co.*, 54 Utah 572, 184 P. 190; *Moss* v. *Taylor*, 73 Utah 277, 273 P. 515; *Perkes* v. *Utah-Idaho Milk Co.*, 85 Utah 217, 39 P. 2d 308. An assignee, being a party is given the right by the Constitution to appear in court to prosecute or defend the cause. If Section 6-0-24 must be construed as providing contrary, it is unconstitutional and void.

The first paragraph of Section 6-0-24 (quoted above) prohibits any person not duly licensed to practice law in this state, from practicing law or from holding himself out to the public as a person qualified to practice or carry on the calling of a lawyer. The second paragraph was probably added because of an apprehension that the courts would construe the first paragraph as prohibiting one from appearing in a cause to which he was a party, which construction would have rendered the statute unconstitutional. This second paragraph contains no restrictions. If there are any restrictions in Section 6-0-24 which are in conflict with the constitutional provision discussed above, such restrictions must be spelled out of the language of the first paragraph.

The prohibition against the practice of law contained in Section 6-0-24 is not in conflict with the constitutional provision guaranteeing the right of an individual to appear and defend or prosecute a cause to which he is a party. Individuals have long been permitted to manage, prosecute and defend their own actions, but this is not considered to be the practice of law. See *In re Opinion of the Judges*, 289 Mass. 607, 194 N. E. 313. One does not practice law by acting for himself any more than he practices medicine by rendering first aid to himself. The practice of law, though impossible of exact definition, involves the carrying on of the calling of an attorney usually for gain and consists of giving advice, as such, acting in a representative capacity and rendering services to others. See *Liberty Mut. Ins. Co.* v. *Jones*, 344 Mo. 932, 130 S. W. 2d 945, 125 A. L. R. 1149; *In re Opinion of the Judges*, supra; *Fink* v. *Peden*,

214 Ind. 584, 17 N. E. 2d 95; *State* v. *C. S. Dudley & Co.,* 340 Mo. 852, 102 S. W. 2d 895.

From the above it will readily be seen that there is no conflict between the quoted constitutional provision and Section 6-0-24. The former relates to the right of an individual to appear for himself in the prosecution or defense of a cause. The latter is a prohibition against *practicing law,* one of the elements of which is the rendering of legal service or the giving of legal advice to another usually for gain.

Under the adjudicated cases the complaint alleges facts which show that the respondents are practicing law. Reference to the complaint discloses that the respondents are allegedly holding themselves out as qualified to give and are giving advice to others; that they are preparing and filing pleadings, suing out garnishments, attachments, etc., preparing judgments and procuring them to be signed and entered by the courts, procuring the institution of supplementary proceedings and conducting the same, etc. The performance of these acts for others constitutes the practice of law. See *In re Duncan,* 83 S. C. 186, 65 S. E. 210, 24 L. R. A., N. S., 750, 18 Ann. Cas. 657; *In re Ripley,* 109 Vt. 83, 191 A. 918; *People* v. *People's Stockyards State Bank,* 344 Ill. 462, 176 N. E. 901; *Yount* v. *Zarbell,* 17 Wash. 2d 278, 135 P. 2d 309; *In re Shoe Mfrs. Protective Assn, Inc.,* 295 Mass. 369, 3 N. E. 2d 746; *Liberty Mut. Ins. Co.* v. *Jones,* 344 Mo. 932, 130 S. W. 2d 945, 955, 125 A. L. R. 1149, and annotation at 1173. In the Liberty Mutual Ins. Co. case, the court noted that:

"While a layman may represent himself in court, he cannot even on a single occasion represent another, whether for a consideration or not. And a corporation cannot represent itself in court at any time but must appear by attorney. On the other hand the doing of any single act out of court in a representative capacity that a lawyer might do will not necessarily convict a layman of engaging in the law business. * * * The holding out may be evidenced by repeated acts indicating a course of conduct, or by the exaction of a consideration."

The complaint insofar as it alleges that the defendants are doing these various things for others states a cause of action and it must be held that the demurrer was improperly sustained.

The question as to whether the defendants are illegally engaging in the practice of law by soliciting the placements of claims in their hands for collection, having an assignment of the claim made to them, and then proceeding in their own names as assignees to prepare legal papers, institute law suits, manage and conduct supplemental proceedings, employ counsel, etc., really presents two problems: First, can they proceed in their own names as assignees to do the work themselves; and second, can they institute, manage and control proceedings and preparation of legal papers by employing a licensed attorney to do the work for them?

We believe that both of these questions must be answered in the negative. The authorities almost uniformly hold that laymen cannot evade and circumvent a statute such as our Section 6-0-24 by the device of taking an assignment of the claim and proceedings in their own names. See *State* v. *James Sanford Agency,* 167 Tenn. 339, 69 S. W 2d 895; *People* v. *Securities Discount Corp.,* 279 Ill. App. 70, affirmed 361 Ill. 551, 198 N. E. 681; *Graustein* v. *Barry,* 315 Mass. 518, 53 N. E. 2d 568; *Bump* v. *Dist. Ct.,* 232 Iowa 623, 5 N. W. 2d 914; *Gill* v. *Richmond Co-op Ass'n,* 309 Mass. 73, 34 N. E. 2d 509.

The defendants take the position that the constitutional provision, Art. I, Sec. 11, discussed above gives them the right to proceed as assignees to do the various things of which the plaintiffs complain. We have already noted that an assignee is a party within the meaning of the Constitutional provision even though the assignment be only for purpose of bringing suit. But this holding is not determinative of this point. Before one may proceed in the courts to prosecute a claim in which another has a beneficial interest it must be determined whether or not

the assignment was made to accomplish an illegal purpose. Section 6-0-24 prohibits the practice of law by laymen. The courts themselves will not permit laymen to appear in court in a representative capacity. The policy of the courts and the legislature in this regard may not be circumvented by the subterfuge of a layman taking an assignment to permit him to carry on the *business* of practicing law.

The casual assignment for procedural convenience falls in an entirely different class. See comment in *Graustein* v. *Barry*, 315 Mass. 518, 53 N. E. 2d 568. The casual assignment does not constitute a business of collecting claims for others. Rather such assignments are made for procedural and administrative convenience and permit groups of persons collectively to pursue a similar or common right. There may well be legitimate purposes for the taking of an assignment by one engaged in the business of collecting claims for others. But collection agencies as a part of their business of serving others, clearly should not be permitted to prepare legal papers, commence suits, appear in court, prepare judgments and generally manage law suits for its various customers. See cases last cited. It does not matter what particular form or name they give their procedure the practice of furnishing or performing legal services for another is essentially the same.

When the defendants solicit the placement of claims with them for collection, they are asking third parties to allow them to render the service of collecting the claim. At that time the collection agency has absolutely no interest, either legal or beneficial, in the claim. The only interest they ever get comes by virtue of a promise to prosecute the claim. Courts cannot remain blind to the fact that the assignment of the claim to the defendants for collection is not made as a gratuity. The percentage of the amount collected which is allowed to the defendants is given to them for one purpose only; to compensate them for services rendered in the collection thereof. Where the

collection practice involves the preparing of legal papers, furnishing legal advice and other legal services, the compensation allowed must be assumed to be in part allowed to pay for the legal services so rendered. No matter how one looks at it, this constitutes the rendering of legal services for others as a regular part of a business carried on for financial gain. This essential fact cannot be hidden by the subterfuge of an assignment. The assignment itself, if used to permit this practice, is for an illegal purpose and one proceeding under such an assignment is not protected by the constitutional provision giving one the right to appear for the purpose of prosecuting or defending a cause to which he is a party. See comment in *Rae* v. *Cameron,* 112 Mont. 159, 114 P. 2d 1060, (modifying *State ex rel. Freebourn* v. *Merchants' Credit Service,* 104 Mont. 76, 66 P. 2d 337) in which the court noted that such a practice involves the element of an assignment for an illegal purpose.

The taking of an assignment under circumstances such as those detailed above cannot possibly change the essential fact that the defendants are rendering legal services for another for gain. The constitutional provision designed to insure the right of a party to appear in his own behalf neither authorizes nor protects the practice of the defendants of rendering legal services to others by adopting the form of an assignment. Though the state will not interfere if an individual desires to conduct his own legal affairs without the aid of counsel, the public interest demands that no person hold himself out to the public as qualified to render legal services for others unless he in fact is so qualified. *Bump* v. *Dist. Ct.,* 232 Iowa 623, 5 N. W. 2d 914.

The legislature, in the proper exercise of its police powers, has restricted the practice of the law to those meeting specified standards. Those who meet the required standards and who follow the prescribed procedure may be licensed to practice law. All those not licensed according to the

prescribed procedure are conclusively presumed to be incompetent to carry on the calling of an attorney.

The fact that the defendants in some instances employ a regularly licensed attorney to prepare necessary legal papers and conduct the trial of a suit does not make their conduct legal. One cannot do through an employee or an agent that which he cannot do by himself. ■ If the attorney is in fact the agent or employee of the lay agency, his acts are the acts of his principal or master. When an attorney represents an individual or corporation, he acts as a servant or agent. Since he acts for others in a representative capacity, doing those things which are customarily done by an attorney, he practices law within the meaning of Section 6-0-24. The same conduct on the part of laymen would likewise be the practice of law, and since said layman would be unlicensed, such practice would be illegal. The prohibition against the practice of law by a layman contained in Section 6-0-24 applies alike to the practice by a layman directly and in person and to the indirect practice through an agent or employee. It is immaterial that said layman may select duly licensed attorneys as his agents or employees through whom he practices law. If the attorney be in fact the agent or employee of a layman, his act is that of the layman (his principal). Such principal would be engaging in the illegal practice of law if he through such an agent rendered legal services to a third party for compensation and as a regular and customary business practice.

Thus, *In re G. H. Oterness*, 181 Minn. 254, 232 N. W. 318, 320, 73 A. L. R. 1319, the defendant was held to be illegally practicing law under the following circumstances. The defendant, a duly licensed member of the bar, was employed by a bank as vice president on a fixed annual salary. In addition to his duties with the bank he was permitted to engage in the law practice performing acts both for the bank and for various third parties. All fees collected from said third parties were turned over to the bank and were to be treated as income of the bank. Dis-

ciplinary action was brought against the defendant vice president. In holding that the defendant should be "severely censured * * * for participating in the practice of law by a banking corporation" the court noted:

"There can be no objection to the hiring of an attorney on an annual salary basis by banks, other corporations, firms, or individuals, to attend to and conduct its or their legal business. An attorney so employed may, as attorney for his employer, foreclose mortgages owned by such employer, and may include the proper attorney's fees therefor in the foreclosure charges, so long as such fees are covered by and paid to him out of his salary and do not exceed what is actually paid to him or result in any profit to the employer. See *Swift* v. *Board of County Commissioners*, 76 Minn. 194, 78 N. W. 1107. But neither a corporation nor a layman,. not admitted to practice, can practice law, nor indirectly practice law by hiring a licensed attorney to practice law for others for the benefit and profit of such hirer. For this bank to employ defendant to conduct law business generally for others, for the benefit and profit of the bank, amounted to the unlawful practice of law by the bank, and was misconduct both on the part of the bank and this defendant, who was a participant therein."

In *People* v. *California Protective Corp.*, 76 Cal. App. 354, 244 P. 1089, 1091, the court held:

"A corporation can neither practice law nor hire lawyers to carry on the busines of practicing law for it. * * * Though all the directors and officers of the corporation be duly licensed members of the legal profession, the practice of law by the corporation would be illegal nevertheless."

In an annotation in 73 A. L. R. 1328, the annotator notes that: "As will appear from the subsequent discussion of the cases, there is no judicial dissent from the proposition that a corporation cannot practice law." (citing a number of cases.) Then follows a statement of the theory of the rule. A quotation from the case of *Re Co-operative Law Co.*, 198 N. Y. 479, 92 N. E. 15, 16, 32 L. R. A., N. S., 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879, shows that the rule is based upon the considerations of the essential nature of the practice of the law and the desire to make the attorney

directly amenable to the client rather than to some intervening master or principal. The court noted that:

"The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent, and it cannot. exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation, and the attorney would be responsible to the corporation only. His master would not be the client but the corporation, conducted it may be wholly by laymen, organized simply to make money and not to aid in the administration of justice which is the highest function of an attorney and counselor at law."

Then at page 1331 of the annotation there is a discussion of attempts by corporations to shield themselves behind a duly authorized attorney. One statement from *Re Cooperative Law Co.,* supra, may be of interest here:

"Since a corporation cannot practice law directly, it cannot do so indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law would not tolerate."

The annotation then contains a number of illustrations applying the rule against corporate practice of law to various fact situations.

In *Rosenthal* v. *Shepard Broadcasting Service, Inc.,* 299 Mass. 286, 12 N. E. 2d 819, 114 A. L. R. 1502, the court held that a radio station broadcasting a program consisting of the giving of legal advice to selected persons who wrote in for legal advice was practicing law. This case like those cited next above involved the attempt of the lay agency to practice law through employees or agents, who were licensed attorneys. These cases stand clearly for the proposition that a layman or lay agency cannot directly or indirectly practice law and the prohibition reaches those

situations where the lay agency or layman seeks shelter behind an employee or agent who is a licensed attorney.

The complaint alleges that the defendants in the instant case solicited the placement of claims with them for collection, that they promised the owners of the claims that they would bring legal actions thereon in the appropriate courts in the State of Utah, that they promised and agreed at their own expense to pay all costs and to furnish all legal services incident thereto, all in consideration of the agreement of the owners of said claims to permit the defendants to deduct and retain for their own use a fixed percentage of all sums of money actually collected on said claims and accounts as a result of the defendants' said services.

Under these allegations it is clear that any attorney furnished to perform the legal services which the defendants agree, as a usual business practice, to perform or cause to be performed would be the employee of the defendants. There would, under these circumstances, be no contract or privity between the owners of the various claims and the attorneys furnished by the defendants. The fee allowed by the owners of the claims to compensate defendants for the services rendered are deducted by the defendants for their own use and benefit. The services so rendered are such as are usually and customarily rendered by an attorney in the practice of his profession. Under the allegations any attorney retained to perform such services in the enforcement of such claims would be the defendants' employee or agent. Such a business conducted for the purpose of bringing legal actions on claims owned by third parties and consisting of the payment of all costs and the furnishing of all legal services incident to the bringing of the actions is the practice of law. Where, as here, the agency rendering the service is a lay agency, it is the illegal practice of law. Such is the almost uniform holding of the authorities as applied to collection agencies operating along similar lines. See *In re Tuthill*, 256 App. Div. 539, 10 N. Y. S. 2d 643; *Richmond Ass'n of Credit Men* v. *Bar Ass'n*, 167 Va. 327, 189 S. E. 153; *Midland Credit Adj. Co.* v. *Donnelly*,

219 Ill. App. 271; In *re Shoe Mfrs. Protective Ass'n., Inc.,* 295 Mass. 369, 3 N. E. 2d 746; *State* v. *C. S. Dudley & Co.,* 340 Mo. 852, 102 S. W. 2d 895; *In the Matter of Co-Operative Co.,* 198 N. Y. 479, 92 N. E. 15, 32 L. R. A., N. S., 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879; *State ex rel Freebourn* v. *Merchants' Credit Service,* 104 Mont. 76, 66 P. 2d 337 as modified by *Rae* v. *Cameron,* 112 Mont. 159, 114 P. 2d 1060.

The public has long been interested in the protection of the trust relationship between an attorney and his client. Numerous restrictions have been placed upon the office of an attorney to insure to the client that the attorney will hold his client's best interest to be paramount to any other consideration except his duty as an officer of the court. Thus while a layman may have an agent select an attorney for him and even deal with the attorney through the agent, the attorney must in fact represent the purported principal rather than the purported agent. The interjection of the collection agency between the client and the attorney so that the attorney would be answerable to the collection agency as principal would come within this objection. See cases last cited above. The collection agencies perhaps perform functions which are both convenient and necessary in the field of business today and they are no doubt equipped to perform such functions. But when a collection agency undertakes to bring lawsuits on the claims of third parties and perform the necessary legal services incident thereto (even though they function through licensed attorneys), they are practicing law within the meaning of Section 6-0-24. They being lay agencies, such practice of law is illegal and prohibited.

The pleadings disclose that the defendants are illegally practicing law and therefore states a cause of action for injunctive relief. If the facts alleged can be proved the defendants should be enjoined from directly or indirectly rendering legal services for others and from soliciting claims under an agreement that they will bring and prosecute actions thereon in the courts. As to

injunction being the proper remedy, see *Depew* v. *Wichita Ass'n of Credit Men,* 142 Kan. 403, 49 P. 2d 1041, certiorari denied, 297 U. S. 710, 56 S. Ct. 574, 80 L. Ed. 997; *State Bar of Oklahoma* v. *Retail Credit Ass'n,* 170 Okl. 246, 37 P. 2d 954; *Paul* v. *Stanley,* 168 Wash. 371, 12 P. 2d 401.

Judgment reversed. Costs to appellants.

LARSON and TURNER, JJ., and M. J. BRONSON, District Judge, concur.

McDONOUGH, J., concurs in the result.

WADE, J., being disqualified, did not participate herein.