433 P.2d 1011

**Lloyd OLSEN, Plaintiff and Respondent,**

v.

**Aldus D. CHAPPELL, Defendant
and Appellant.**

No. 10822.

Supreme Court of Utah.

Nov. 17, 1967.

George W. Preston, Logan, for appellant.

L. Brent Hoggan, Logan, for respondent.

CALLISTER, Justice:

Plaintiff, assignee of a promissory note, brought suit against the defendant, a co-maker. The defendant admitted the execution of the note and its default, but contended that the payee had, by words and conduct, released him from any obligation to pay the note. The jury, in answer to special interrogatories, found in favor of the defendant. However, the court granted plaintiff a judgment notwithstanding the verdict and defendant appeals.

A recital of the facts are unnecessary except to point out that there was no written instrument of release, no consideration, and the note was never delivered to the defendant or his comaker. Under these circumstances, the plaintiff was entitled to a judgment as a matter of statutory law.

Section 44–1–121, U.C.A.,[1] provides:

A negotiable instrument is discharged:
* * *

(4) By any other act which will discharge a simple contract for the payment of money.

1. Uniform Negotiable Instruments Act, § 119 (identical).

Section 44-1-124, U.C.A.1953,[2] provides:

The holder may expressly renounce his rights against any party to an instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal made at or after maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon.

Subsection (4) of 44-1-121 is inapplicable under the facts of this case, because there was no consideration.[3] Therefore, the case is governed by 44-1-124 which requires either an instrument in writing or the delivery of the note to the person primarily liable thereon (defendant).[4]

Affirmed. Costs to plaintiff.

CROCKETT, C. J., and TUCKETT, J., concur.

ELLETT, Justice (concurring).

I concur in the opinion of Mr. Justice Callister but would like to answer the seemingly valid objections made by Justice Henriod.

In the first place, the only assignments of error made by the defendant were:

1. The trial court erred awarding judgment to the plaintiff notwithstanding the jury interrogatories and pursuant thereto making finding No. 4 of the Findings of Fact and conclusion No. 1 of the Conclusions of Law.

2. The trial court erred in refusing to give judgment for the defendant and against the plaintiff pursuant to the answers to special interrogatories as found by the jury.

No other errors are claimed by the defendant, and we should not consider any imaginary ones not claimed nor discussed. 5 Am.Jur.2d, Appeal and Error, § 654; Patton v. Evans, 92 Utah 524, 69 P.2d 969, 112 A.L.R. 589. We may be assured that if there were any other errors of merit, they would have been brought to our attention.

An appellate court ordinarily does not rule on matters not brought before it by counsel, and for a very good reason: The court needs the research of the lawyers to guide its decision and to avoid falling into error such, for example, as relying on a case which has been overruled or upon a statute which has been repealed or amended.

2. Uniform Act, § 122 (substantially identical).

3. 65 A.L.R.2d 593, § 5, p. 601.

4. The note in question was executed and in default prior to January 1, 1966, the effective date of the repeal of Secs. 44-1-121 and 44-1-124.

The fifth paragraph of the dissent is a classic example in claiming that the plaintiff has no standing in court since he did not foreclose the chattel mortgage which was given at the same time the note was signed. The cited statute (78–37–1, U.C.A. 1953) prior to 1965 did provide that mortgages on realty and chattels must be foreclosed before deficiency could be taken against the mortgagor; and had this statute been the law at the time this suit was brought, we can be sure it would have been raised and argued to us here. However, the statute cited was amended by Chapter 172, Laws of Utah 1965, so as to delete the reference to personal property. Now the mortgagee need not foreclose a chattel mortgage before suing upon the note because the statute is not substantive law and affects only the remedy. The amendment was effective May 11, 1965, and would govern all cases filed since that date, although the contract may have been made prior thereto. See 59 C.J.S. Mortgages § 484 b; James v. Chapman, 50 Wyo. 210, 58 P.2d 439.

The dissent also makes the assertion that plaintiff had no standing to sue because "there is no evidence in the record that there was a true, binding assignment to that finance company by which the latter could transfer any rights in the note to anyone, for suit or otherwise." On the back of the note in question appears, over the signature of the payee, the following language:

### GUARANTEE BY SELLER

To induce System Finance Company of Champaign, Illinois, to purchase this installment note signed by Clark J. Obray and Aldus D. Chappell, in the amount of $5,173.92, the undersigned does hereby unconditionally guarantee to said Company, or any assignee, payment of all amounts specified in said note and covenants that in the event of any default of payment of any installment or performance of any requirement of said note to pay the full amount remaining unpaid, upon demand.

The liability of the undersigned shall not be affected by any settlement, extensions of time of payment or variations in terms of said note effected with the purchaser, by operation of law or otherwise.

(Sgd.) H. C. Bruce (Witness)          (Sgd.) John Olsen (Guarantor)

Dated this 19th day of October, 1964.

Exhibit 2 is an assignment from the System Finance Company of Champaign, Illinois, and is in words and figures as follows:

## ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS:

That SYSTEM FINANCE COMPANY OF CHAMPAIGN, ILLINOIS hereby assigns, transfers, sets over, and conveys to LLOYD OLSEN all its right, title, and interest in and to that certain Installment Note dated the 20th day of January, 1964, wherein Clark J. Obray and Aldus D. Chappell, as partners of Logan, Utah, and individually, are Makers, and John P. Olsen is Payee.

Dated this 2nd day of February, 1966.

Attest:

(Sgd.) Betty L. Lewis

SYSTEM FINANCE COMPANY OF CHAMPAIGN, ILLINOIS

By (Sgd.) H. C. Bruce

---

John P. Olsen, the payee of the note, was at the trial and testified for his father, the plaintiff herein. He did not claim the plaintiff was not the owner for the purpose of suit, and for that matter neither did the defendant. In fact, at the beginning of the trial the parties stipulated as follows:

MR. HOGGAN (Counsel for Plaintiff): May it be stipulated at this time: (1) That the promissory note sued upon by the plaintiff was executed by the defendant Chappell. (2) That the plaintiff Lloyd Olsen is the owner of the note for the purposes of suit. (3) That the note was assigned to the plaintiff for the purposes of suit only and that he paid nothing for it. (4) That the plaintiff's complaint be amended as to the allegation in the complaint and the prayer to ask for the judgment of $4,523.92.

MR. PRESTON (Counsel for Defendant): I'll stipulate to the amendment of the complaint, stipulate to the fact of the execution of the note, that Mr. Olsen is the assignee of the note, that the note was assigned to him for the purpose of bringing this suit, and that he paid no consideration for the assignment of the note. In other words, I'll stipulate to your stipulation.

This court has repeatedly held, contrary to the assertion of the dissent, that an assignment may be made for collection, and the assignee is the real party in interest. In the case of Lynch v. MacDonald, 12 Utah 2d 427, 367 P.2d 464, the defendant made the same contention asserted by Mr. Justice Henriod here. The court in disposing of this contention said at page 434 of the Utah Reports 367 P.2d at page 468:

The appellant, Dennis W. Lynch, by virtue of his assignment from Sierra Madre Oil Company, prosecuted this action in his name, and he was, as plaintiff, the real party in interest. Rule 17(a), Utah Rules of Civil Procedure. The general rule is that an assignee is the real party in interest. Moore's Federal Practice, Vol. 3, p. 1339, #17.09; Perkes v. Utah Idaho Milk Co., 85 Utah 217, 39 P.2d 308; Nelson v. Smith, 107 Utah 382, 154 P.2d 634, 157 A.L.R. 512; Chesney v. District Court of Salt Lake County, 99 Utah 513, 108 P.2d 514; Campbell v. Peter, 108 Utah 565, 162 P.2d 754.

It will be noted that Mr. Justice Henriod concurred in that decision.

In the case of Campbell v. Peter, 108 Utah 565, 162 P.2d 754, the question was raised as to whether an assignee for collection only was the real party in interest. This court at page 567 of the Utah Reports, 162 P.2d at page 755, attempted to put an end to such contentions when it said:

We will not again go into the question of whether an assignee of a chose in action who holds merely for the purpose of collection is the "real party in interest." We have repeatedly held that he is.

It seems to me the main opinion has correctly analyzed the claimed errors, and for that reason I concur therein.

HENRIOD, Justice (dissenting):

I dissent. The record in this legal action, in my opinion, justifies the jury verdict, notwithstanding the trial judge's judgment notwithstanding the verdict. This, in view of the rule that we look at the evidence in an atmosphere favorable to the verdict. The jury sensed what seems to be obvious in this case: That no one looked to Chappell for payment until the roof fell in on Obray, with whom everyone dealt, including looking to the latter for payment, transferring title to him alone, with mortgage back, and his selling it as sole owner, at a profit to himself, which he took down the river. The circumlocutious route taken by John P. Olsen in getting at Chappell after Obray failed, by using his father, rather than himself, to file this lawsuit, after a paper tour from Logan to Systems Finance, back to Logan to John's father for the purpose of suit, in my opinion was a highly questionable end run to catch a touchdown pass by a loving father for son John. I think the jury was right in this case in concluding that John P. Olsen didn't give a tinker's damn for Chappell, who, the evidence indicates, was relieved of liability on the note and mortgage, until son John no longer could look to Obray for payment.

Secondly, John P's father, was chosen to sue for John P, everyone knowing that the father would turn any money collected over to his son, John P. Furthermore, the father, Lloyd, had no standing in court since he based his claim on a note assigned

by Systems Finance,—and there is no evidence in the record that there was a true, binding assignment to that finance company by which the latter could transfer any rights in the note to anyone, for suit or otherwise. The so-called assignment to Finance System appears to be an inducement to get it to collect the note, with no consideration and no obligation to accept such offer, or no acceptance evidence.

The assertion by Mr. Justice Ellett that I concurred in saying that an assignment for collection is all right, in Lynch v. MacDonald, is correct. But in this case there was no valid assignment at all, for any purpose, and simply saying there was is an ipse dixit reserved to anyone who cares to resort to such reasoning, unsupported by the record.

Furthermore, I am of the opinion that Title 44–1–124, U.C.A.1953, upon which the main opinion relies in disposing of this case, is not dispositive, since it obviously is based on the rights of a holder in due course, which father Lloyd claims he was not.

Furthermore, although not pressed on appeal, father Lloyd had no standing in court since he sued on the note, but did not foreclose on the mortgage, which was mandatory under Title 78–37–1, U.C.A.1953, extant at the time of this transaction. Hence, this court has no jurisdiction to review the case on the note alone without the plaintiff having pursued the statutory foreclosure remedy.

Furthermore, I feel constrained to answer the observations made by my learned colleague, Mr. Justice Ellett, even though I share his view that matters not raised on appeal are not reviewable. In this dissent I point out that father Lloyd did not foreclose, the mortgage, a point not raised on appeal, and Mr. Justice Ellett justifiably may be critical of my having called it to attention for the first time on appeal. However, he overlooks the fact that the main opinion bases its whole decision on Title 44, "Negotiable Instruments,"—also a point not raised on appeal as a defense,— a fact in which Mr. Justice Ellett concurs. It seems to me that this is like sticking one's tongue out only to bite it off. If the majority can decide a case on a point not raised on appeal it seems logical and reasonable that the dissent should enjoy the same prerogative. Mr. Justice Ellett's reasoning logically should demand a reversal of this case.

As to Mr. Justice Ellett's argument that a subsequent statute eliminating personal property from foreclosure procedure, applied to a mortgage of personal property executed prior thereto, he is wrong; also in saying the statutes were not substantive. There were vested rights under a contract at the time the note and mortgage were executed in this case, and any subsequent statute that attempted to impair the obligation of such contract clearly would be unconstitutional as being offensive to Article

I, Section 18 of the Utah Constitution. Neither of Mr. Justice Ellett's citations of authority supports his contention, but actually negates it. In the James case the parties, by contract, agreed to abide by any future changes in the law. Furthermore, the case had to do simply with a reduction of time to give notice to assert the contract right,—not to destroy the contract or impair the obligation thereof. Not so in the instant case. The C.J.S. citation is less helpful in supporting his contention.

I think this case should be reversed for the specific reasons given by Mr. Justice Ellett in sustaining it. In that event this whole dissent would die, without necessity of just fading away.