Charles R. **KENNEDY** and Rebecca Kennedy, his wife, Plaintiffs and Appellants,

v.

The **BANK OF EPHRAIM**, a Utah Corporation, George Barton and Bertha Barton, his wife, Virgil P. Jacobsen, Curtis J. Armstrong, L. Cannon Anderson and Ruel E. Christensen, Defendants and Respondents.

No. 15694.

Supreme Court of Utah.

April 9, 1979.

---

Don B. Allen, of Ray, Quinney & Nebeker, Salt Lake City, for plaintiffs and appellants.

Louis G. Tervort, Manti, John R. Anderson, Raymond W. Gee, of Kirton, McConkie, Boyer & Boyle, Salt Lake City, for defendants and respondents.

WILKINS, Justice:

This is a multifaceted action, tried before the District Court, Salt Lake County, sitting with a jury. Plaintiffs alleged ten separate causes of actions, of which seven were dismissed by the Court. Defendants Barton counterclaimed on seven separate causes, of which two were dismissed by the Court. The jury returned verdicts of no cause of action against plaintiffs on all three of their submitted claims, and against Bartons on two of the counterclaims. Verdicts favorable to the Bartons were returned on the remaining three counter claims submitted to the jury and judgment was entered thereon. Plaintiffs appeal. Affirmed; costs to defendants. All statutory references herein are to Utah Code Annotated, 1953, as amended.

Plaintiffs obtained a $40,000 loan from Defendant Bank of Ephraim (herein "Bank") in 1967 which they used to purchase 280 acres of real property in Montana. The note was guaranteed by Defendant George Barton (herein "Barton"), a friend and business associate of Plaintiff Charles R. Kennedy in other matters. Between 60

to 90 days after the loan was granted,[1] when no collateral was pledged by plaintiffs, Barton, a director of the Defendant Bank of Ephraim, pledged his own $50,000 certificate of deposit for the Kennedy loan.

Plaintiffs paid certain amounts on the principal and interest of their note from time to time, but the loan was not paid in full. Instead, the maturity date was extended and the note renewed in various amounts over a period of five years. At one time, Barton secured a renewal for plaintiffs by paying the interest on their note in the amount of $4,095 and taking the note of the·plaintiffs in return. This latter note was the subject of one of Bartons' counterclaims in this action on which the jury returned a verdict in favor of Bartons.

Plaintiffs defaulted on the note to the Bank of Ephraim in 1972, and the Bank sued on the note, obtained judgment against plaintiffs and filed Lis Pendens against plaintiffs' property in Montana.

Plaintiffs thereupon brought this action against the Bank, the Bartons, and all of the directors of the Bank, alleging tortious interference with business relations, slander and harassment, seeking to enjoin the Bank from attaching their Montana property, and seeking an order of the Court to require the Bank to use Bartons' pledged collateral to reduce the Bank's judgment against plaintiffs. As noted, above, all of plaintiffs' actions were dismissed by the Court except three causes relating to interference with business relations, on which the jury returned verdicts against plaintiffs.

The three verdicts favorable to Bartons on their counterclaims were: (1) for $4,095, together with interest and attorneys' fees on the note described above, payable to Bartons by plaintiffs, (2) for $42,951.33, the amount of a judgment awarded to Barclays Bank of California in a previous lawsuit against plaintiffs and Bartons on a note given that bank by plaintiffs, which had been similarly guaranteed by Barton, and

which Bartons had been required to pay, and (3) for $12,000 representing Bartons' share of the proceeds of the sale of 20 percent of Barton Syndicate, a joint venture, of which one half was held by the Bartons, and for which plaintiffs had never accounted nor remitted.

■ Plaintiffs' principal argument is one which has not been directly considered by this Court, and involves interpretation of the Uniform Commercial Code.[2] Plaintiffs contend that the District Court erred in dismissing their second cause of action by which they prayed for an order directing the Bank to satisfy the debt from the collateral pledged by Barton, and also that the Court erred in dismissing their tenth cause by which they requested an injunction against the Bank's attachment of plaintiffs' property in Montana. Plaintiffs argue that a secured party is required to satisfy its debt from the pledged security before proceeding against any other property of the debtor.

This argument would be pertinent if the pledged security were real property rather than personal property. Section 78–37–1, which now provides for foreclosure and sale as the exclusive remedy of a creditor secured solely by real property, also required personal property pledged for security, prior to a 1965 amendment, noted infra, to be exhausted before proceeding against other property. In that year, however, our Legislature adopted the Uniform Commercial Code, and at the same time revised Section 78–37–1 by deleting the reference to personal property. It is clear that the Legislature intended that the rights of a creditor secured by personal property should be governed by the Uniform Commercial Code.

Section 70A–9–501 of the Code provides: When a debtor is in default under a security agreement, a secured party . ˙ . may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure.

1. The note, signed by both plaintiffs, was payable on demand after 90 days.

2. See the discussion of this matter, however, in the concurring opinion of Justice Ellett in *Olsen v. Chappell*, 20 Utah 2d 115, 433 P.2d 1011 (1967).

Those Courts which have considered creditor's rights under the Uniform Commercial Code have consistently interpreted this section to allow the secured party a broad choice of remedies, and not as a limitation. In the case of *Michigan National Bank v. Marston,* 29 Mich.App. 99, 185 N.W.2d 47 (1970), for example, the Michigan Court of Appeals reasoned:

It is of course basic law that the purpose of collateral is to secure the creditor and increase his chance of recovery in the case of default. The existence of a security interest in no way affects the existence of the debt. It merely provides the secured party with an immediate source of recovery in addition to the standard remedies of an unsecured creditor.

The Court then concluded that the intent of the Code is to "broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies." [3] We hold that the Bank has an option to pursue any of the parties liable on this note, which is secured solely by personal property, and may also, at its option, ignore that security and satisfy its judgment from other property in the hands of the judgment debtor.

Plaintiffs further pursue this theory, arguing that the "equities" are on their side, and vaguely alleging that the directors of the Bank conspired against plaintiffs, hoping to acquire plaintiffs' Montana property for pennies on the dollar; that Barton used his influence as director of the Bank to persuade the Bank to pursue plaintiffs rather than proceeding against him; that plaintiffs and Barton had an oral agreement that the certificate of deposit would be used to satisfy the debt first, before any of plaintiffs' assets.

But plaintiffs failed to proffer any proof at the trial which would tend to substantiate any of these allegations. On the contrary, plaintiffs acknowledged that they had received the proceeds from the loan, admitted that it was their sole debt, and testified that they had represented to the Bank that they would repay it, and had assured the Bartons that the certificate of deposit would never be used for payment. We find no merit in any of plaintiffs' arguments here, and likewise find no error of the Court in dismissing these causes of action.

■ Plaintiffs next argue that the judgment against them for $42,951.33, noted ante, should be reduced to half that amount in accordance with the law of contribution among co-obligors. Plaintiffs also contend that the Court erroneously instructed the jury in this matter. The evidence shows that Bartons' involvement in the Barclays Bank matter in the previous lawsuit was similar to their involvement in the Ephraim Bank note here. Barton signed a letter of guarantee, guaranteeing the debt of Charles R. Kennedy with Barclays Bank, and received none of the proceeds or other consideration. It is clear that Barton was merely an accommodation party as that term is defined by Section 70A-3-415:

(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

*     *     *     *     *     *

(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party.

In drafting the Uniform Commercial Code, the commissioners made these comments in the 1957 Official Text, Section 3-415:

Comment 1: Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor) . .

*     *     *     *     *     *

Comment 5: . . . Under ordinary principles of suretyship the accommodation party who pays is subrogated to the rights of the holder paid, and should have his recourse on the instrument.

---

**3.** See also *McCullough v. Mobiland, Inc.,* 139 Ga.App. 260, 228 S.E.2d 146 (1976), and the text and cited cases in 69 Am.Jur.2d, Secured Transactions, Section 551.

As Barton was an accommodation party, the principles of contribution among co-obligors are not applicable. As Barton has paid the judgment, he is entitled to judgment against plaintiffs for the full amount he was required to pay.[4] We find no error in the Court's instructions on this matter, and reject plaintiffs' contentions that their requested instructions were erroneously refused.

■ Finally, plaintiffs argue that the jury's verdict of $12,000 against plaintiffs, representing the Bartons' one-half share of the sale of 20 percent of Barton Syndicate, was erroneous in fact and law. Plaintiffs argue that Bartons are not entitled to any amount on that sale inasmuch as subsequent to this transaction plaintiffs purchased for a very small amount, viz., $1,000, 25 percent of Barton Syndicate, and delivered one-half thereof to Bartons. Plaintiffs therefore contend that Bartons gained two and one-half percent interest and plaintiffs owe them nothing.

We find this argument without merit. The purchase of additional interests after the sale of another interest does not excuse plaintiffs for their failure to account and remit the proceeds of the sale. The evidence shows that the purchase and sale were unrelated transactions, and that there was no agreement between the parties that one transaction should be offset by or affect the other. Plaintiffs, as appellants here, have the burden to show that the jury's verdict was based on evidence that is not substantial or credible and they have failed to do so.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

**4.** See *First & Citizens Nat. Bank of Elizabeth City v. Hinton*, 216 N.C. 159, 4 S.E.2d 332 (1939); *Simson v. Bilderbeck, Inc. and Miller Metal Co.*, 76 N.M. 667, 417 P.2d 803 (1966).