2002 UT 18

APPLIED MEDICAL TECHNOLOGIES, INC., Plaintiff,

v.

Amorie EAMES, in her capacity as trustee of Heritage Management Trust, K.L. Hall, in his capacity as trustee of Heritage Management Trust, Ronald E. Eames, in his capacity as trust protector of Heritage Management Trust, Heritage Management Trust, and John Does 1–10, beneficiaries and/or unknown trustees of Heritage Management Trust, Defendants.

Heritage Management Trust, K.L. Hall, trustee, and Ronald E. Eames, Consolidated Counterclaim Plaintiffs and Appellants,

v.

Applied Medical Technologies, Inc., Wade Lee Hill, in his capacity as officer, director, and controlling person of Applied Medical Technologies, Inc., and John Does 1–10, as officers, directors, and accessories, Counterclaim Defendants and Appellees.

No. 991007.

Supreme Court of Utah.

Feb. 5, 2002.

Christopher W. Edwards, Hurricane, for appellants.

Michael N. Zundel, Roger J. McConkie, Salt Lake City, and Frank A. Allen, Jeffrey C. Wilcox, St. George, for appellees.

RUSSON, Associate Chief Justice.

¶ 1 Defendant Heritage Management Trust ("Heritage Trust"), appeals the trial court's dismissal of its claims against Applied Medical Technologies, Inc., and Dr. Wade Lee Hill. We affirm.

## BACKGROUND

¶ 2 In November 1993, Ronald Eames and Dr. Hill agreed to form a Nevada corporation known as AMT, Inc., which subsequently became known as Applied Medical Technologies, Inc. ("Applied Medical"). In connection therewith, Mr. Eames, Dr. Hill, and others received equitable shares in Applied Medical. Mr. Eames elected to have his shares held by his family's trust, Heritage Trust, with Amorie Eames, Mr. Eames's wife, as trustee.

¶ 3 In October 1996, Dr. Hill initiated an action against Heritage Trust to foreclose on a trust deed in Mrs. Eames's name as trustee ("the foreclosure action").[1] The foreclosure action was tried, resulting in a deficiency judgment in Dr. Hill's favor against Heritage Trust in the amount of $62,070.48. Neither party appealed this judgment.

¶ 4 On May 1, 1998, Applied Medical sued Heritage Trust, seeking declaratory relief regarding dissenter's rights claims, valuation of the Applied Medical stock, and the effect of Mr. Eames's bankruptcy. Subsequently, on July 6, 1998, Heritage Trust and K.L. Hall, as trustee of Heritage Trust,[2] filed a separate suit against Applied Medical and Dr. Hill, alleging various claims regarding the Applied Medical stock. Finally, on or about February 9, 1999, Heritage Trust, Mr. Hall, and Mr. Eames sued Dan Page and Jeff Zander, alleging gross negligence, wilful misconduct, fraud, and breach of loyalty and fiduciary duty. Subsequently, the trial court consolidated these three cases.

¶ 5 On January 28, 1999, the foreclosure action court issued a writ of execution requiring Heritage Trust to deliver nonexempt property to satisfy the deficiency judgment. A Washington County constable served and executed the writ according to rule 69(f) of the Utah Rules of Civil Procedure. Pursuant to the writ, the constable levied upon Heritage Trust's nonexempt property, including Heritage Trust's pending claims in the consolidated case.

¶ 6 The constable's sale was held on March 31, 1999, in St. George, Utah. The constable presented for sale "all claims, counterclaims, causes of action, choses in action, rights to payment, and rights to compensation of every kind and nature, which [Heritage Trust] may have against Hill or Applied Medical Technologies ..., including, but not limited to, all such claims and causes of action asserted in complaints filed" in the consolidated case. Both the Heritage Trust trustee[3] and

---

1. We are unable to ascertain the facts underlying the foreclosure action from the briefs or the record before us. Nevertheless, those facts are irrelevant to the issue on appeal. The only fact relevant to this appeal is that the judgment resulted in a deficiency judgment and, subsequently, a writ of execution.

2. Both Mrs. Eames and Mr. Hall have served or are serving as trustee of Heritage Trust. However, their current relationship and their respective roles as trustee are unclear from the facts presented.

3. We are unable to ascertain whether this was Mrs. Eames or Mr. Hall from the briefs or the record on appeal.

the trust's attorney, Christopher Edwards, attended the sale, but neither bid on the consolidated case claims. Dr. Hill, however, bid upon and purchased those claims.

¶ 7 After the sale, Dr. Hill, having purchased all of Heritage Trust's claims against himself and others, moved to dismiss those claims. Dr. Hill argued that the trial court should dismiss because Utah appellate courts "have made clear that a judgment creditor may execute on a judgment debtor's cause of action against the judgment creditor and then dismiss the causes of action." Accordingly, the trial court dismissed Heritage Trust's claims in the consolidated case on September 20, 1999. The court reasoned:

> It appears to the Court that Dr. Hill has legally and lawfully acquired all of the claims and causes of action of Heritage Management Trust, K.L. Hall, Trustee, Amorie Eames, Trustee, and any successor trustee pursuant to a constable's sale held on March 31, 1999, and that the Certificate of Sale of Personal Property Per Legal Writ issued by the constable describes all of Heritage[ Trust's] claims, counterclaims, causes of action, choses in action, rights to payment, and rights to compensation of every kind and nature including Heritage[ Trust's] claims described in the Complaints commencing [the consolidated action].

¶ 8 Heritage Trust appeals, contending that the trial court erred by dismissing its claims because Dr. Hill unlawfully obtained Heritage Trust's causes of action at the constable's sale. Conversely, Dr. Hill and Applied Medical contend that the trial court properly dismissed those claims because Dr. Hill legally purchased Heritage Trust's causes of action at the sale pursuant to Utah Rule of Civil Procedure 69(f).

¶ 9 The issue on appeal is whether the trial court properly dismissed Heritage Trust's causes of action against Dr. Hill, which he purchased at the constable's sale. Specifically, we must determine whether Dr. Hill, as a judgment creditor, may purchase claims pending against himself at a constable's sale to satisfy a deficiency judgment that he has against Heritage Trust and then move to dismiss those claims.

## STANDARD OF REVIEW

¶ 10 Whether a judgment creditor may levy upon choses in action, i.e., causes of action, is a question of law, which we review for correctness. *Snow, Nuffer, Engstrom & Drake v. Tanasse,* 1999 UT 49, ¶ 7, 980 P.2d 208. Likewise, whether public policy precludes a civil defendant from purchasing causes of action against itself is a question of law, which we review for correctness. *Id.*

## ANALYSIS

¶ 11 Rule 69(b) of the Utah Rules of Civil Procedure provides, "A writ of execution may be used to levy upon all of [a] judgment debtor's personal property and real property which is not exempt from execution under state or federal law." Utah R. Civ. P. 69(b). Accordingly, under rule 69(f) of the Utah Rules of Civil Procedure, a sheriff or constable, pursuant to a writ of execution, may levy upon the nonexempt property and sell it at a sheriff's sale. That rule states in pertinent part:

> (f) *Service of the writ.* Unless the execution otherwise directs, the officer must execute the writ against the non-exempt property of the judgment debtor by levying on a sufficient amount of property, if there is sufficient property; collecting or selling the *choses in action* and selling the other property in the manner set forth herein.

Utah R. Civ. P. 69(f) (emphasis added).

¶ 12 According to the plain language of the rule, all choses in action "may ordinarily be acquired by a creditor through attachment and execution." *Tanasse,* 1999 UT 49 at ¶ 9. In *Tanasse,* we defined chose in action "as 'a claim or debt upon which a recovery may be made in a lawsuit. It is not a present possession, but merely a right to sue; it becomes a "possessory thing" only upon successful completion of a lawsuit.' " *Id.* (quoting *Barron's Law Dictionary* 71 (3d ed.1991)).

¶ 13 Given that choses in action are amenable to execution under rule 69(f), it follows that a defendant can purchase claims,

i.e., choses in action, pending against itself and then move to dismiss those claims. Generally, judgment creditors can purchase any nonexempt property at a sheriff's sale to satisfy the judgment that it has against the judgment debtor. *See Garland v. Fleischmann,* 831 P.2d 107, 108, 112 (Utah 1992); *Free v. Farnworth,* 112 Utah 410, 414, 188 P.2d 731, 733 (1948); *see also Kelly v. Barnet,* 24 Cal.App. 119, 140 P. 605, 606 (1914); *Aymond v. Rabalais,* 657 So.2d 165, 167 (La. Ct.App.1995); 33 C.J.S. *Executions* § 222(c) (1998).

¶ 14 However, in *Tanasse,* we recognized an exception to the general rule and held that a law firm's "actions–in forcing an execution sale of defendant's assets to satisfy a default judgment, purchasing [the plaintiff's] pending legal malpractice claims against it, and extinguishing that claim through a motion to dismiss-violate[ ] public policy." 1999 UT 49 at ¶ 12. Heritage Trust contends that we should extend this exception to preclude any judgment creditor from purchasing causes of action against itself at a sheriff's sale. Specifically, Heritage Trust asserts that we should extend this exception to preclude all judgment creditors from purchasing claims against themselves under rule 69(f) because (1) rule 69(f) is unconstitutional as applied to judgment debtors such as Heritage Trust, and (2) the public policy considerations upon which we relied in *Tanasse* are applicable to all judgment creditors that purchase claims against themselves at sheriff's sales, not just to lawyers as judgment creditors.

## I. CONSTITUTIONALITY OF RULE 69(f)

■ ¶ 15 Heritage Trust contends that Dr. Hill unlawfully purchased its claims filed against Dr. Hill and others in the consolidated case. Specifically, Heritage Trust argues

that rule 69(f) is unconstitutional as applied to Heritage Trust because it was denied the opportunity to have its day in court under the open courts provision of the Utah Constitution.[4] That provision states:

All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

Utah Const. art I, § 11.

■ ¶ 16 At the very least, the open courts provision guarantees litigants access to the courts, i.e., a day in court, affording them the opportunity to litigate any justiciable controversy. *Miller v. USAA Cas. Ins. Co.,* 2002 UT 6, ¶¶ 38, 41–42, 44 P.3d 663. However, that right is limited to those individuals who actually have a viable claim, because the right is inextricably connected with that claim. Thus, when a litigant's claims are transferred to another, the constitutional right to access the courts to litigate those claims is transferred with the claims. *Nelson v. Smith,* 107 Utah 382, 388–89, 154 P.2d 634, 637–38 (1944). Therefore, the open courts provision does not preclude the alienation or sale of a litigant's claims.

¶ 17 Indeed, causes of action are regularly sold. *See, e.g., Warner v. DMG Color, Inc.,* 2000 UT 102, ¶¶ 3–4, 9, 11, 17, 20 P.3d 868. For example, in *Tanasse,* we held that pending claims could be acquired through attachment and execution, and then sold pursuant to a sheriff's sale. 1999 UT 49 at ¶ 9. After claims have been sold, a new party steps into the shoes of the former plaintiff, and the claims remain cognizable, *see Olsen v. Chappell,* 20 Utah 2d 115, 118, 433 P.2d 1011, 1014 (1967), but the sale cuts off the former plain-

---

**4.** Heritage Trust, as far as we can ascertain from its briefs, appears to also argue that rule 69(f) is unconstitutional as applied to it under article I, section 1 of the Utah Constitution. Specifically, Heritage Trust seems to intimate that because rule 69(f) permitted Dr. Hill to purchase the claims against himself and others so that he could move to dismiss those claims, Heritage Trust has been denied a right to "redress of

grievances." However, Heritage Trust's briefing on the issue fails to comply with rule 24(a)(8) of the Utah Rules of Appellate Procedure, *see Associated Gen. Contractors v. Bd. of Oil, Gas & Mining,* 2001 UT 112, ¶ 37 & n. 8, 38 P.3d 291, and we refuse to address issues inadequately briefed, researched, and presented. *State v. Lusk,* 2001 UT 102, ¶ 34, 37 P.3d 1103.

tiff's right to pursue those claims. *Warner,* 2000 UT 102 at ¶ 18; *see also Bauer v. Sweeny,* 964 F.2d 305, 308 (4th Cir.1992). Once acquired by another, the new litigant has the right to determine the course and scope of the litigation of the claims purchased, including the right to move to dismiss the pending claims. Under the open courts provision, there is no appreciable difference between a defendant purchasing claims against itself and another purchasing those claims. In either case, the original plaintiff is precluded from pursuing those claims. Hence, a defendant who has acquired claims pending against itself may move to dismiss those claims without abrogating the right of access to the courts.

¶ 18 Moreover, the last clause of the open courts provision guarantees that an individual may "prosecut[e] or defend[ any civil action] before any tribunal in this State," so long as the individual is a party to the suit. Utah Const. art. I, § 11. When a defendant purchases claims pending against itself, becoming both plaintiff and defendant, and then moves to dismiss those claims, the former plaintiff is not denied the opportunity to prosecute or defend a civil action in court because the former plaintiff is no longer a party to the suit. *See Nelson,* 107 Utah at 388–89, 154 P.2d at 637–38. Therefore, we conclude that Dr. Hill's actions—in compelling execution of the claims pending against himself to satisfy a default judgment, purchasing those claims at the sheriff's sale, and moving to dismiss those claims-do not contravene the open courts provision of the Utah Constitution.

## II. PUBLIC POLICY EXCEPTION

■ ¶ 19 Heritage Trust also contends that Dr. Hill improperly purchased Heritage Trust's claims filed against Dr. Hill and others in the consolidated case because "[p]ublic [p]olicy dictates that a person [should] not be able to acquire a chose in action against itself by means of writ of execution or other forced sale." In making this argument, Heritage Trust relies upon *Tanasse,* in which, indeed, this court held as a matter of public policy that a law firm could not purchase a legal malpractice claim pending against the law firm at a sheriff's sale. *See* 1999 UT 49 at ¶¶ 12–13, 980 P.2d 208. However, while we stated in *Tanasse* that public policy concerns included both the effect of denying the plaintiff the right to a trial on his claims and the preclusion of a fair valuation of those claims, we clearly stated that additional public policy concerns were present when dealing with lawyers. We explained:

> We recognize that both of the above-described problems are present in every situation in which a judgment creditor seeks to execute on an action pending against it. However, in situations like the present, in which the attorney–client relationship is at issue, these problems take on special significance. Allowing lawyers and law firms to execute on legal malpractice actions pending against them may significantly undermine the public trust in the legal profession and process and compromise the relationship.

*Id.* at ¶ 15.

¶ 20 Lawyers, as attorneys and counselors at law, are officers of the courts of this state and take a special oath subjecting them to the Rules of Professional Conduct promulgated by the Utah Supreme Court. *See* Utah R. Prof'l Conduct preamble; *see also Featherstone v. Schaerrer,* 2001 UT 86, ¶ 34, 34 P.3d 194. Because of their legal training and experience, lawyers are in an advantageous position that enables them to appraise the merits of a claim, the amount of damages that they could incur, and the duration of potential litigation. Lawyers often know confidential information regarding former clients, such as their former clients' weaknesses and financial conditions. All of the foregoing places a lawyer in a position to take advantage of a client if the lawyer were allowed to purchase that client's malpractice claim against the lawyer and then move for dismissal of the claim. *See Smoot v. Lund,* 13 Utah 2d 168, 172, 369 P.2d 933, 936 (1962) (stating that attorneys are "not permitted to take advantage of [their] position[s] or superior knowledge"); *see also In re Evans,* 42 Utah 282, 342, 130 P. 217, 240–41 (1913) (recognizing that attorneys have legal technical knowledge that general public lacks). Thus, we concluded in *Tanasse* that "public

confidence in both the legal profession and the legal process as a whole would be damaged if lawyers were allowed to execute on legal malpractice claims brought against them." 1999 UT 49 at ¶ 16. Therefore, in that case, pursuant to our constitutional duty to regulate and supervise the actions of attorneys in the practice of law, *see* Utah Const. art. VIII, § 4, we determined that such public policy considerations were sufficient bases to hold that attorneys and law firms could not purchase legal malpractice claims against themselves with the intention of extinguishing those claims. *Tanasse*, 1999 UT 49 at ¶¶ 12, 18.

¶ 21 Heritage Trust now urges us to extend the *Tanasse* exception to bar Dr. Hill from purchasing claims against himself. The claims that Dr. Hill purchased were stock claims. Neither party has alleged that the agreement between Dr. Hill and Mr. Eames regarding the formation of Applied Medical and the disbursement and allocation of shares in Applied Medical was anything but an arm's-length business transaction. This is simply a case of a nonlawyer, Dr. Hill, purchasing claims against himself at a sheriff's sale. Unlike our holding in *Tanasse*, which we based on the public policy of protecting the integrity of the legal process, 1999 UT 49 at ¶¶ 15–16, here, where neither the attorney-client relationship nor the legal process is sullied or damaged and there are no other policy reasons to extend the exception to the general rule we articulated in *Tanasse*, we are reluctant to hold that nonlawyers may not purchase claims against them solely on the basis of public policy not derived from constitutional or statutory law. Therefore, we decline to enlarge the exception recognized in *Tanasse*.

## CONCLUSION

¶ 22 We hold that Dr. Hill legally purchased claims pending against himself and then moved to dismiss those claims. We therefore affirm the trial court's dismissal of Heritage Trust's claims purchased by Dr. Hill at the sheriff's sale.

¶ 23 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.